IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff | No. 3:16-CR-152 |
| vs. | |
| JOSIAH FERREBEE | Honorable James M. Munley |
| Defendant | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

Respectfully submitted,


/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

## PROCEDURAL HISTORY

Defendant, Josiah Ferrebee ("Ferrebee") was charged in a criminal complaint filed in the United States District Court for the Middle District of Pennsylvania on June 3, 2016. The United States charged him with persuading a minor to engage in sexual activity for purposes of producing a visual depiction in violation of 18 U.S.C. Section 2251(a) and (e).

Ferrebee was arrested and brought before Magistrate Judge Joseph F. Saparito for an initial appearance on June 3, 2016. He pleaded not guilty. He waived his right to a detention hearing and was detained pending trial without prejudice to request a detention hearing at a later date.

On June 6, 2016, Ferrebee, through his counsel, filed a Motion for Psychiatric Evaluation. Judge Saparito granted the motion on June 7, 2016. The evaluation was conducted at the Federal Detention Center, SeaTac in Washington between July 18, 2016 and September 6, 2016. A report was issued by SeaTac on September 19, 2016. Ferrebee was returned to Lackawanna County Prison on October 11, 2016.

Ferrebee filed a Motion for Release from Custody on November 29, 2016. The court denied the motion and ordered him detained pending trial on December 6, 2016.

1

On August 9, 2017, Ferrebee filed a Motion to Dismiss the charges against him on the grounds that the United States failed to bring him to trial within 70 days as required by the Speedy Trial Act, 18 U.S.C Section 3161(c)(1). The Motion to Dismiss is pending before the court.

Ferrebee has also filed a Motion to suppress statements and physical evidence obtained by the United States. This Brief is submitted in support of said motion.

### STATEMENT OF FACTS

Josiah Ferrebee was born on October 11, 1996 in Reading, Pennsylvania. He graduated from Pine Grove High School in 2015. He has no further education.

Ferrebee lived with both parents until 2012. His parents were divorced that year and he has lived with his mother since that time. He does not have a strong relationship with his father. He has two younger brothers, one 18 years old and the other 16. Both brothers live at home with Ferrebee and his mother.

Ferrebee's mother is an assistant manager in the Twin Grove Campground in Pine Grove, PA (the "Campground"). The Campground is a recreational vehicle campground. Ferrebee began working at the Campground in 2015 serving ice cream. He worked briefly at a truck stop from October, 2015 to April, 2016, when he returned to the Campground. He earned approximately $8.00 per hour at each job. Ferrebee has had no other employment.

2

Ferrebee is heterosexual. He does not have many friends. He had approximately 5 friends in high school, but he does not keep in close touch with them. He has never had a girlfriend.

Ferrebee is of average intelligence. He has a limited mental health history of family counseling for approximately 1 year after his parents' divorce and has never been proscribed any psychotropic medication. He has no history of substance abuse or alcohol use. His health is generally good. He does, however, suffer from Type-1 Diabetes, diagnosed in 2012. He is required to closely monitor his blood sugar. He takes insulin and has limited diet. When his blood sugar is low or high he often becomes distorted and/or dizzy.

Ferrebee has no prior criminal record or involvement with the criminal justice or legal system. He has not had an occasion to work with a lawyer on any matter.

Ferrebee arrived to work at the Campground on June 2, 2016 at 10:00am. This was early as he had to clean the ice cream machine at the Campground. At approximately 11:00am he received a telephone call from his mother, who asked him to come to the Campground office. She did not specify the reason. Two Homeland Security Officials and one State Police Officer were waiting for him when he arrived at the office. His mother informed him that the State Police Officer had a weapon. His mother did not stay for the interview as she had to go back to her duties. The officer questioned Ferrebee without providing him with his

3

*Miranda* rights or otherwise advising him that he had the right to an attorney or the right to refuse to answer the questions. Ferrebee felt pressured and coerced to answer the questions and did not feel that he had the right to refuse to answer and terminate the interview.

The interview at the Campground concluded at approximately 12:30pm. The investigators then told Ferrebee to meet them at the State Police Barracks between 1:30pm and 2:00pm for a polygraph test. He was not informed of his right to refuse the polygraph test, his right to an attorney and was not given time to confer with family or friends. He did not believe he had the right to refuse to go to the Barracks. When he arrived at the Barracks, he was taken in a small back room with no windows. He was given his *Miranda* rights at this time. He did not believe he had the right to refuse the test and any statement given at that time was not voluntary.

After taking statements from Ferrebee, the United States also performed a search of Ferrebee's Apple iPhone, model A1428SNC39KTR3RFH19, an HP Pavilion desktop computer, model P7-1226SNMXU203071L, a Seagate hard drive, model ST31000524AS, SN5VPA3JPJ, and a PNY thumb drive and a yellow car thumb drive. The United States obtained consents for the searches on June 2, 2016. Evidence produced from these searches included KIK messages allegedly between Ferrebee and an unidentified female, and pictures and graphic images of unidentified juvenile females displaying their genitals or engaging in sexual

4

activity. The pictures and graphic images came from the desktop computer. From the discovery provided, it is not clear whether the KIK messages came from the iPhone, thumb drives or another source.

On June 2, 2016, Ferrebee was suffering from an average blood sugar level, which made him dizzy and distorted.

### STATEMENT OF QUESTIONS INVOLVED

I.    Should the court suppress the statements given by Ferrebee on June 2, 2016 on the grounds that said statements were the product of custodial interrogation; that Ferrebee was not provided with his *Miranda* warnings prior to the statements; that Ferrebee did not voluntarily waive his *Miranda* rights; and/or that the statements were, otherwise, not voluntarily given?

Suggested Response: Yes

II.    Should the court suppress the physical evidence obtained by the United States from the desktop, iPhone and/or thumb drives on the grounds that the United States did not obtain a warrant before performing said searches and/or that the consents for said searches were not freely and voluntarily given?

Suggested Response: Yes

### ARGUMENT

### I.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established the principle that under the Fifth Amendment the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id*. at 444. *Miranda* warnings are required when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the government." *United States v. Dupree*, 617 F. 3d 724, 731 n.7 (3d Cir.2003).

"For a person to be in custody when he has not been arrested, 'something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart of to allow the suspect to do so." *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir.2006). Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *Id*. at 359-60. An interrogation has been defined as "(a) conduct intentionally designed to evoke a confession, as well as (b) any conduct an officer should reasonably have foreseen would elicit an

6

inculpatory response." *United States v. Bonner*, 469 Fed.Appx. 119, 126 (3d Cir.2012).

A person may, however, waive his *Miranda* rights, provided the waiver is made voluntarily, knowingly and intelligently." *United States v. Pruden*, 398 F.3d 241, 246 (3d Cir.2005). Once a defendant challenges the admissibility of any statements made while in custody, the government must prove by a preponderance of the evidence that the defendant was advised of and understood his *Miranda* rights and that he validly waived those rights. *United States v. Briscoe*, 69 F.Supp.2d 738, 741 (D.V.I.1999), *aff'd in part, rev'd in part on other grounds*, 234 F.3d 1266 (3d Cir.2000).

To prove a valid waiver, the Government has the burden of establishing that the waiver was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Pruden*, 398 F.3d at 246; *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir.2012). The Supreme Court has characterized this as both a "heavy" and "great burden." *Miranda*, 384 U.S. at 475, S.Ct. 1602; *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).

To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must consider the totality of circumstances surrounding

the defendant's statement; *United States v. Tyler*, 164 F.3d 150, 158 (3d Cir.1998)). In evaluating the totality of the circumstances, courts should examine "some traditional indicia of coercion," including: (1) the duration and conditions of detention; (2) the attitude of the police toward the suspect; (3) the suspect's maturity, education, physical condition and mental state; (4) the suspect's background and experience; and (5) the suspect's prior dealings with the criminal justice system. *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed. 954 (1987); *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir.2005); *Lam v. Kelchner*, 304 F.3d 256, 264 (3d Cir. 2002).

Ferrebee submits that the statement he gave to the officers on June 2, 2016, at the Campground, was the result of custodial interrogation and, therefore, inadmissible because he was not given his *Miranda* rights. Ferrebee further submits that the facts referred to in this brief, his age, maturity, health issues, education, lack of significant employment experience, lack of experience with the legal system, the fact that he was not provided with or waived his *Miranda* rights, together with his own legitimate objective feelings that he had no choice but to cooperate with the questioning, establish a basis for the court to hold a hearing to determine whether, and to conclude that the statements were involuntary and/or the result of unconstitutional custodial interrogation and, therefore, should be suppressed.

Ferrebee further submits that any statement given at the State Police Barracks was, under the circumstances set forth above, was also involuntary. Moreover, under *Missouri v. Seibert,* this statement is inadmissible despite the *Miranda* warnings as a continuation of the prior testimony and the "fruit of the poisonous tree". *Missouri v. Seibert,* 542 U.S. 600 (2004).

## II.

The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. Digital devices and computer networks are covered by the 4th Amendment. *See United States v. Stabile*, 633 F.3d 219, 230-31 (3d Cir. 2011). The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). "Consent can provide an exception to the warrant requirement if it is voluntarily given." *We Buy, Inc. v. Town of Clarkstown,* 2006 U.S. Dist. LEXIS 76792, at 20, 2006 WL 3016314, at 7 (S.D.N.Y. Oct. 20 2006). Consent may be explicit or implicit, and the authority to consent may be actual or apparent. *See, e.g., United States v. Buckner*, 473 F.3d 551, 555 (4th Cir. 2007). The question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of all the circumstances. Whether

9

consent is voluntary under all the circumstances is a question of fact that must go to the factfinder. *Id.*

Ferrebee contends that the facts referred to on pages 2 through 5 of this Brief also provide a basis for the court to conduct a hearing to determine whether, and to conclude that the consents given to search the desktop, thumb drives and iPhone were not freely and voluntarily given, and that therefore, whether any evidence gained from those searches should be suppressed.

### CONCLUSION

Ferrebee submits that the statements taken from him on June 2, 2016 and that the evidence obtained from the search of the desktop, iPhone and thumb drives should be suppressed, and that, the United States should not be allowed to use said evidence at its case in chief at the trial in this matter. The basis for Ferrebee's contention is that the statements were taken and searches conducted in violation of the Fourth Amendment to the United States Constitution. When a defendant files a Motion to Suppress, the United States has the burden to establish by a preponderance of the evidence that it did not obtain the evidence in violation of defendant's rights. *United States v. Ritter*, 416 F.3d 256, 261 (3d. Cir 2005). Ferrebee requests that the court schedule a hearing to determine whether the government can meet its burden of proof on this issue.

Respectfully submitted,

/s/ Joseph A. O'Brien

10

Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
OLIVER, PRICE & RHODES
1212 S. Abington Road, PO Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com

### CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify

that on this date, I caused the foregoing BRIEF IN SUPPORT OF MOTION TO SUPPRESS

EVIDENCE via the Court's ECF system on all counsel of record as authorized under

Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for

11

the Middle District of Pennsylvania. I further certify that all counsel of record in

the case, but for the Plaintiff, are registered CM/ECF users and that service will be

accomplished by the CM/ECF system.

Francis P. Sempa, Esq.
U.S. Attorney's Office
235 North Washington Avenue
Scranton, PA 18503
Email: fran.sempa@usdoj.gov


/s/Joseph A. O'Brien
Joseph A. O'Brien, Esquire

P:\O'BRIEN, JOE\USA\Ferrebee, Josiah\Brief in Supp Motion to Suppress Evidence..docx

12