UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :          NO.: 3:CR-16-152

VS.                              :                (Judge Munley)

JOSIAH FERREBEE,
                    Defendant                  :

## RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE

### A. Statement of the Facts

On February 11, 2016, D.M., age 15, was interviewed by Detective Ritter of the Grand Traverse County Sheriff's Office in Michigan.   D.M. advised Detective Ritter that she was home on January 26, 2016, in her living room sitting on the couch when she received a message from somebody that she does not know named "jokester".   D.M. did not remember the full user name, but did remember the title--"killing myself".   D.M. stated that during the conversation, the person was asking her to take photos of herself , which she did.   D.M. advised that she gave him information about herself and he threatened to post it if she did not give more information or send pictures.   D.M. stated that while she was inside the bathroom, she did take photos of herself

1

without her clothes on, including photos of her breasts and vagina. D.M. also stated that the individual wanted her to do certain things to herself, which included using scissors to cut herself, and she complied with the request.

Forensic analysis of D.M.'s Apple iPod that was utilized to have this conversation revealed images of D.M. that she took of herself and sent to the individual utilizing the name "killing myself".   These photos of D.M. included images of herself with no clothes on and images of her vagina and bare breasts.   The conversations between D.M. and "killing myself" started on January 26, 2016 at 18:34 hours Eastern Standard Time and ended on January 26, 2016 at 20:14 hours Eastern Standard Time.   Agents reviewed the thread of text messages as well as the images "killing myself" instructed D.M. to send and discovered several images depicting child pornography.   Among those are the following text messages and images:

> a. 1/26/16 @19:06:13 EST Received: Take a close up pic of one of your nipples
> 1/26/16 @ 19:06:33 EST Sent: Why the fuck
> 1/26/16 @ 19:06:37 EST Received: Take the pic now
> 1/26/16 @ 19:06:41 EST Sent: Please don't make me do this
> 1/26/16 @ 19:06:47 EST Received: Next time you talk. I post

all no exceptions.
1/26/16 @ 19:07:03 EST Received: If no reply with the pic within 10 seconds. I post
1/26/16 @ 19:07:17 EST Sent: (image of D.M.'s nipple)

b. 1/26/16 @ 19:08:16 EST Received: Take a pic of your full body naked
1/26/16 @ 19:08:56 EST Sent: (image of D.M. fully unclothed and nude standing in front of bathroom mirror and slightly off to the one side)
1/26/16 @ 19:09:18 EST Received: Show full body. Not just half. Retake pic
1/26/16 @ 19:09:40 EST Sent: (image of D.M. fully unclothed and nude standing in front of bathroom mirror)

c. 1/26/16 @ 19:10:06 EST Received: Take a pic of your vagina. Place camera between ur legs
1/26/16 @ 19:10:35 EST Sent: (image of D.M.'s vagina)
1/26/16 @ 19:10:46 EST Received: Spread ur vagina open and take a pic of the inside
1/26/16 @ 19:11:06 EST Sent: (image of a close up of D.M.'s vagina)

d. 1/26/16 @ 19:13:02 EST Received: Take a pic of ur toothbrush
1/26/16 @ 19:13:18 EST Sent: (image of an orange toothbrush)
1/26/16 @ 19:13:36 EST Received: Place your toothbrush in your vagina as far as it goes and take a pic
1/26/16 @ 19:13:58 EST Received: The longer I wait. The more pic.
1/26/16 @ 19:14:01 EST Received: Pics
1/26/16 @ 19:14:30 EST Received: Hurry up
1/26/16 @ 19:14:34 EST Sent: (image of the orang toothbrush

inside of D.M's vagina)
1/26/16 @ 19:14:59 EST Received: Does it hurt. Yes or no
1/26/16 @ 19:15:10 EST Sent: Yes

e.  1/26/16 @ 19:16:12 EST Received: Take a pic of a
    straightener (for hair)
    1/26/16 @ 19:16:41 EST Sent: (image of hair straightener)
    1/26/16 @ 19:17:01 EST Received: Place the handle of the
    straightener into your vagina and take a pic
    1/26/16 @ 19:17:50 EST Sent: (image of the hair straightener
    inside of D.M's vagina)
    1/26/16 @ 19:18:02 EST Received: Does it hurt. Yes or no
    1/26/16 @ 19:18:15 EST Sent: Yes

f.  1/26/16 @ 19:31:32 EST Received: Make the cut bigger and
    on your nipple. Show full boob. Retake
    1/26/16 @ 19:32:06 EST Received: Hurry up
    1/26/16 @ 19:32:38 EST Sent: (image of D.M.'s breast with
    what appears to be a cut or blood alongside the nipple)
    1/26/16 @ 19:33:02 EST Received: Make the cut bigger. I
    should see a drop of blood
    1/26/16 @ 19:33:07 EST Received: Retake
    1/26/16 @ 19:33:22 EST Received: The longer I wait.   The
    more pics.
    1/26/16 @ 19:33:24 EST Sent: (image of D.M.'s breast with
    what appears to be a spot of blood or some type of red
    substance next to the nipple)
    1/26/16 @ 19:33:38 EST Received: Does it hurt. Yes or no
    1/26/16 @ 19:33:42 EST Sent: yes it fucking hurts

g.  1/26/16 @ 19:36:52 EST Received: Place the scissors in your
    vagina and take a pic
    1/26/16 @ 19:37:35 EST Sent: (image of a close up of D.M.'s

vagina with the sharp end of the scissors inside her vagina)
1/26/16 @ 19:38:11 EST Received: Show your full body with
the scissors in your vagina. Sit on the floor with legs spread
1/26/16 @ 19:38:54 EST Sent: (image of D.M. fully nude,
sitting on the floor with the sharp end of the scissors
inserted into her vagina)

On or about February 19, 2016, Kik provided the following

subscriber information in addition to an IP history log for the account.

A review of the IP login history indicated the user mainly utilized IP

addresses.

>     First Name: Killing
>     Last Name: Myself
>     Registration Timestamp: 2015/10/12 20:05:41
>     Email: jokert760@gmail.com (unconfirmed)
>     Username: jokster760
>     Registration Client Info: birthday = 1994-04-23
>     Registration Client Info: device type = iphone
>     Registration Client Info: system-version = 8.1.3

A review of the IP login history indicated the user mainly utilized IP

addresses 174.59.159.25, 174.59.95.246 and 166.171.58.246.

On June 2, 2016, after the execution of a search warrant at the

defendant's residence in Schuylkill County when the defendant was not

present, Homeland Security Investigation (HSI) agents traveled to the

Twin Grove Campground, the defendant's place of employment. There, they met with the defendant in order to attempt to interview him.

The meeting with Ferrebee took place within a common activities room within the main office of the campground. HSI Agents Murray and Cerminaro interviewed the defendant. They expressly advised Ferrebee that he was not under arrest and was free to leave at any time. Ferrebee voluntarily agreed to be interviewed.

During the interview, HSI agents did not display their firearms (both agents' firearms were concealed under their shirts), did not use hostile tones of voice, and did not physically restrain Ferrebee in any manner. The interview lasted approximately 45 minutes. Ferrebee was seated comfortably on a couch, and agents on a few occasions left Ferrebee alone sitting on the couch.

During the interview, Ferrebee admitted that he used the Kik Messenger user account JOKESTER760 from 2015 through 2016; that he talked with others about sexual subjects on the Kik Messenger, including girls as young as 14; that he asked young girls to perform sexual acts on themselves, take photos of the sex acts, and send the

6

photos to him; that he made demands on the girls and threatened to post embarrassing things about them online of they did not do what he demanded; that he was "addicted" to having these conversations with young girls and would begin the conversations by telling them he was going to harm himself; and that in January 2016, he had a conversation with a teenage girl and demanded that she take explicit sexual photos of herself while performing sex acts, and threatened to post things online about her if she resisted.

Ferrebee subsequently signed a consent to search form, allowing agents to conduct a forensic exam on his iPhone 5. (See attached Exhibit 1). He also consented in writing to undergo a polygraph examination at the Pennsylvania State Police Jonestown Barracks later that same day. (See attached Exhibit 2). Agents suggested to Ferrebee that he get something to eat prior to the polygraph examination, and the interview was terminated.

Ferrebee also signed a written consent form to enable agents to assume his online presence, manifesting his willingness to cooperate with agents, (See attached Exhibit 3), and signed a consent to search form

allowing agents to search his thumbdrives. (See attached Exhibit 4).

Ferrebee also signed a *Miranda* rights waiver form prior to conducting the polygraph examination. (See attached Exhibit 5). After signing that form and waiving those rights, Ferrebee admitted the following: in January 2016, Ferrebee went online with a stranger and demanded pictures of a sexual nature, and threatened the person that he would post embarrassing information online if the person did not provide the pictures; he asked the age of the person and said that he knew that a 15-year-old would be more susceptible than a 25-year-old to his demands and threats; that he used the Jokester760 Kik account in the January sexual conversation; he identified himself as the person who conversed with D.M. in the January 26, 2016 conversation and initialed/signed each page of the transcript of that conversation; he utilized his current iPhone to talk to people on Kik; he was sexually aroused by the pictures that the girl sent to him and masturbated to some of them; he spoke to about 4-6 girls under the age of 18 and directed them to take pictures of themselves that were sexual in nature; he started engaging in this conduct about a month prior to the January conversation with D.M.; the youngest images

of child pornography he has seen were of boys and girls approximately 14-15 years old; about 7-8 people on Kik sent him naked pictures of themselves, but he only directed 4-6 of those to take the photos and send them to him; he has talked to children as young as 13 on Kik.

On June 3, 2016, Ferrebee was arrested via a criminal complaint and charged with online enticement and production of child pornography. On June 14, 2016, Ferrebee was indicted by a federal grand jury on charges of production and attempted production of child pornography, 18 U.S.C. Section 2251(a) and (e), and using a facility of interstate commerce to persuade, induce, entice, or coerce a minor to engage in any sexual activity for which any person can be charged with a crime, 18 U.S.C. Section 2422(b).

The defendant subsequently filed the instant motion to suppress statements and physical evidence. He contends that he was in custody at the time he made his un-Mirandized statements to agents at the campground; that he subsequently did not voluntarily waive his Miranda rights when interviewed at the Pennsylvania State Police Barracks; and that the statements were otherwise not voluntary.

9

He also contends that the search of his iPhone was illegal because agents did not obtain a search warrant and/or his consent to the search was not voluntary.

## B. Argument

### 1. The Defendant Was Not in Custody During the Campground Interview

The Third Circuit Court has explained the legal principles that apply in determining whether a person was in police custody and thereby entitled to receive *Miranda* warnings prior to being interrogated:

> A person is in custody when he either is arrested formally or his freedom of movement is restricted to "the degree associated with a formal arrest." *Id.* at 743 (citation and internal quotation marks omitted). For a person to be in custody when he has not been arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." *Steigler v. Anderson,* 496 F.2d 793, 799 (3d Cir.1974) (quoting *United States v. Hall,* 421 F.2d 540, 545 (2d Cir.1969)). Thus, "police officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). *Miranda,* of course, requires warnings only when the person the police are questioning is in custody. *Miranda v. Arizona,* 384 U.S. 436, 468, 86 S.Ct. 1602, 1624, 16 L.Ed.2d 694 (1966).

*United States v. Willaman*, 437 F.3d 354, 359–60 (3d Cir. 2006); *United States v. McNeil*, 416 Fed. Appx. 227, 228-29 (3d Cir. 2011) (not precedential). Furthermore, it is the objective circumstances of the interview, not the subjective views of the police or the person interviewed, that govern the determination of custody in a given case. *Stansbury v. California*, 511 U.S. 318, 323 (1994); *United States v. McKinney*, 695 F.Supp. 2d 182, 188-89 (E.D. Pa. 2010). The question is whether a reasonable person in the suspect's situation would feel free to end the questioning and leave. *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005); *United States v. Morgan*, 562 Fed. Appx. 123, 129-30 (3d Cir. 2014). To answer that question, the Third Circuit looks at the following factors:

> (1)whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *See United States v. Czichray,* 378 F.3d 822, 827 (8th Cir.2004); *United States v. Hayden,* 260 F.3d 1062, 1066 (9th Cir.2001); *United States v. Crossley,* 224 F.3d 847, 861 (6th Cir.2000).

*United States v. Willaman*, 437 F.3d at 359–60; *United States v.*

11

*McNeil*, 416 Fed. Appx. at 228-29.

Here, after agents met with Ferrebee at the campground, they expressly informed him that he was not under arrest and was free to leave their presence at any time. The location of the interview was within an office at Ferrebee's workplace, not at a law enforcement venue. The interview lasted approximately 45 minutes, and agents at times left the suspect alone on a comfortable couch. There were no coercive tactics used by the agents: the tone of their questioning was not hostile, the agents did not display their firearms (the guns were concealed under the agents' shirts and thus not visible to Ferrebee), and there was no physical restraint on Ferrebee's movement. Moreover, it is clear that Ferrebee voluntarily submitted to questioning: he was cooperative throughout his interactions with the agents, consenting to a search of his iPhone, permitting agents to assume his online presence in an effort to cooperate, consenting to a polygraph examination, and later voluntarily traveling by himself to the state police barracks for the polygraph, and voluntarily waiving his *Miranda* rights at the barracks, and leaving by himself after the interview and polygraph .

In short, nothing was said or done by the agents which indicated that they would not have heeded a request to depart or allow Ferrebee to do so. *United States v. Willaman*, 437 F.3d at 359. Here, the totality of circumstances show that Ferrebee's freedom was not restrained at all, let alone to a degree associated with a formal arrest. *Oregon v. Mathiason,* 429 U.S. 492 (1977) (defendant not in custody where he came to the police station voluntarily, was informed that he was not under arrest, and left the interview without hindrance); *United States v. King*, 604 F.3d 125, 138–39 (3d Cir. 2010) (defendant not in custody at FBI office interview when he was expressly told he was not under arrest, could have exited the office at any time, and there was no evidence that agents used coercive tactics); *United States v. Arena*, 629 Fed. Appx. 453, 457 (3d Cir. 2015) (not precedential); *United States v. Morgan*, *supra* (suspect not in custody where two-hour interview conducted at suspect's workplace, no display of weapons or hostile tactics by agents, and suspect was told he was free to leave at any time); *United States v. Killingsworth*, 118 Fed. Appx. 649, 650-52 (3d Cir. 2004) (not precedential); *United States v. Rodriguez*, No. 1:09-CR-

00219, 2010 WL 1485704, at \*6–8 (M.D. Pa. Apr. 12, 2010). Ferrebee was not in custody and his statements to police at the campground should not be suppressed.

### 2. Ferrebee Voluntarily Waived his *Miranda* Rights at the State Police Barracks

The defendant next claims that his signed waiver of *Miranda* rights at the state police barracks was not voluntary. This claim, too, is meritless.

On June 2, 2016, after the initial non-custodial interview at his workplace during which Ferrebee voluntarily agreed to cooperate with agents by allowing them to assume his online presence and voluntarily agreed to take a polygraph later in the day at the state police barracks, Ferrebee traveled by himself to the state police barracks and met with agents and the polygrapher. There, he was provided with a written copy of his *Miranda* warnings and waiver of rights form, which he read and signed. After voluntarily waiving his *Miranda* rights, Ferrebee made additional incriminating statements to agents about his online conversation via the Kik Messenger with D.M., including his admission

that he asked D.M. to take pornographic photos of herself and send them to him, and threatened to post embarrassing things about her online if she did not do as he said. He also admitted to engaging in similar conduct with four-to-six girls under age 18.

Ferrebee in essence contends that the circumstances of his campground interview discussed above rendered his subsequent Mirandized statement at the state police barracks involuntary, claiming it is the "fruit of the poisonous tree." As noted above, however, Ferrebee's statement to agents at the campground was made in a non-custodial setting and was clearly voluntary when viewed in the totality of the circumstances. No *Miranda* warnings were required.

Assuming that Miranda warnings were required at the initial interview at the campground, Ferrebee's second interview at the state police barracks, which was preceded by a signed waiver of his *Miranda* rights, should not be suppressed as "fruit of the poisonous tree."

The defendant cites *Missouri v. Seibert*, 542 U.S. 600 (2004) to support his "fruit of the poisonous tree" argument for suppression of the statement made at the state police barracks. As the Third Circuit Court

explained in *United States v. Kiam*, 432 F.3d 524, 531-33 (3d Cir. 2006),

*Seibert* involved an "official, widespread police protocol which directed

officers to interrogate suspects extensively without Miranda warnings,

obtain a confession—which the officers knew could not be used in

court—then adjourn briefly, return and give the suspect his Miranda

rights, and re-elicit a now-valid confession." *Id.* A plurality of the

Supreme Court in *Seibert* applied a five-part test to decide the

admissibility of a second confession given after a pre-Miranda

admission in that case. Justice Kennedy's concurring opinion in *Seibert*,

however, suggested a two-part test, which the Third Circuit has

adopted. *Kiam*, 432 F.3d at 532.

Under *Kiam*, the court must first decide whether agents made a

deliberate choice to flout *Miranda* during the initial interview. If they

did not, that ends the inquiry and the pre-*Miranda* statement is

admissible "absent coercion or improper tactics in obtaining the initial

statement." *Kiam*, *supra* at 531, quoting *Oregon v. Elstad*, 470 U.S. 298,

314 (1985). If agents did deliberately flout *Miranda*, the subsequent

Mirandized statement is still admissible if "curative" measures were

taken by agents.

Here, there is no allegation that agents deliberately flouted *Miranda* during the first interview. Instead, agents arrived at the campground (Ferrebee's workplace), informed him that he was not under arrest and was free to leave at any time, and Ferrebee voluntarily agreed to be interviewed. The interview took place in a campground office and agents were not hostile, threatening, or physically restraining toward Ferrebee. Under the holdings and reasoning of *Elstad* and *Kiam*, Ferrebee's Mirandized statement at the state police barracks is admissible, even if his first statement at the campground was made in violation of *Miranda*.

### 3. Ferrebee's Statements Were Voluntary

Ferrebee also generally alleges that both statements were involuntary and should be suppressed. In determining whether a suspect's statements were voluntary, courts look to the totality of circumstances to see if agents obtained the statements by overbearing the will of the suspect. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226

(1973). In determining whether a suspect's will was overborne, courts assess the details of the interrogation and the characteristics of the accused. *United States v. Montgomery*, 403 Fed. Appx. 674, 676 (3d Cir. 2010) (not precedential).

As noted above, the circumstances of the first statement at the campground clearly show that it was a voluntary statement, made without threats, coercion, or deception on the part of federal agents. *See United States v. Hallford*, 816 F.3d 850, 858-59 (D.C. Cir. 2016) (statements voluntary where defendant not pressured, interview occurred in non-police dominated atmosphere, agents asked straightforward questions and were not hostile, and no threats or promises made); *United States v. Umana*, 750 F.3d 320, 345 (4th Cir. 2014); *United States v. Heller*, 551 F.3d 1108, 1112-13 (9th Cir. 2009).

With regard to the second, Mirandized statement made at the state police barracks later that same day, those circumstances, too, show that it was a voluntary. The Third Circuit has explained that,

> [a] defendant may waive his *Miranda* rights if the waiver is made knowingly, intelligently, and voluntarily. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Two factors affect this determination: First, the relinquishment of the right must

have been voluntary in the sense that it was the product of a free and
deliberate choice rather than intimidation, coercion, or deception.
Second, the waiver must have been made with a full awareness of
both the nature of the right being abandoned and the consequences
of the decision to abandon it. Only if the "totality of the
circumstances surrounding the interrogation" reveal both an
uncoerced choice and the requisite level of comprehension may a
court properly conclude that the *Miranda* rights have been waived.
*Moran v. Burbine,* 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410
(1986).

*United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005); *United States
v. Richardson*, 265 Fed. Appx. 52, 55 (3d Cir. 2008).

Here, as noted above, Ferrebee traveled on his own to the state
police barracks for the interview and polygraph. He voluntarily signed a
standard waiver of *Miranda* rights and voluntarily spoke to agents and
the polygrapher. "[T]here is no evidence in the record that law
enforcement officials coerced or deceived him in order to obtain a waiver
of his Fifth Amendment rights." *United States v. Richardson*, *supra* at
55.

With respect to the characteristics of the accused, in *Richardson*,
the Third Circuit upheld the validity of a *Miranda* waiver and
voluntariness of a confession where the defendant had a low I.Q.,
learning disabilities, and attended special education classes. Here,

Ferrebee, as noted in his brief, is of average intelligence, has good health (other than Type-1 diabetes, which he controls by taking insulin and dieting), has never been prescribed any psychotropic medication, has no history of substance abuse, and is employed at the aforementioned campground. He answered the agents' questions intelligently. He indicated in writing that he understood his *Miranda* rights and was willing to speak to agents without an attorney. There is no allegation that agents threatened him or pressured him to waive his rights. Ferrebee's statements were voluntary.

### 4. Ferrebee's Consent to Search the iPhone and Other Devices was Voluntary

Ferrebee also claims that he did not voluntarily consent to the search of his iPhone and thumb drives. He claims that the facts surrounding his interviews and statements noted above show that his consent was not freely and voluntarily given.

The Third Circuit Court has set forth the legal principles governing consent searches and the analysis courts must use to determine whether a defendant's consent to search was voluntary:

"It is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Supreme Court has "long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Jimeno,* 500 U.S. at 250–51, 111 S.Ct. 1801.

To justify a search based on consent, the Government "has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). This burden "is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer,* 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

There is "no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen." *Schneckloth,* 412 U.S. at 224, 93 S.Ct. 2041. Instead, we determine the voluntariness of a consent by examining the totality of the circumstances. *See id.* at 227, 93 S.Ct. 2041.

Both "the characteristics of the accused and the details of the interrogation" are useful to determine whether, under all the circumstances, a consent to search was voluntary, and no case should "turn[ ] on the presence or absence of a single controlling criterion."[6] *Id.* at 226, 93 S.Ct. 2041.

Factors to consider include: the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment. *See id.; see also United States v. Kim,* 27 F.3d 947, 955 (3d Cir.1994). We have further identified as relevant "the setting in which the consent was obtained [and] the parties' verbal and non-

verbal actions." *United States v. Givan,* 320 F.3d 452, 459 (3d Cir.2003).

*United States v. Price*, 558 F.3d 270, 277–79 (3d Cir. 2009). Moreover, consent to search may be express or implied, and need not be knowing or intelligent, and may be given unintentionally and without the knowledge of the right to refuse consent. *United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

The nature of the agents' interaction with Ferrebee, as well as his personal characteristics, have been described above. The consent to search forms signed by Ferrebee informed him of his right to refuse to consent to the searches, stated his understanding that anything discovered by agents in the search could be used against him in a criminal proceeding, and acknowledged that he was consenting freely and voluntarily, and stated that his consent to the searches was not the result of any promises, threats, coercion, or intimidation.

Here, the totality of the circumstances, including the signed consent forms, show that Ferrebee's consent was voluntary. *See United States v. Brown*, 627 Fed. Appx. 163, 166–67 (3d Cir. 2015) (not precedential); *United States v. Martinez*, 460 Fed. Appx. 190, 194 (3d

Cir. 2012) (not precedential); *United States v. Hernandez*, 76 F. Supp.

2d 578, 581 (E.D. Pa. 1999) (finding voluntary consent where defendant

signed a consent form explaining the police do not have a warrant and

there is a constitutional right to refuse permission to search), *aff'd*, 263

F.3d 160 (3d Cir. 2001); *United States v. Baer*, No. CR 15-417, 2016 WL

4718214, at *6 (D.N.J. Sept. 9, 2016). Ferrebee's motion should be

denied.

Respectfully submitted,

BRUCE D. BRANDLER
United States Attorney

/s/ Francis P. Sempa
Francis P. Sempa
Assistant U.S. Attorney
ID #41294
Suite 311, Federal Building
P.O. Box 309
Scranton, PA 18501
(570) 348-2800
fran.sempa@usdoj.gov

Dated: September 1, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Luann Manning, a supervisory legal assistant in the United States Attorney's Office, do hereby certify that I served a copy of the foregoing Response in Opposition to Defendant's Motion to Suppress Statements and Physical Evidence by electronic filing to the following:

Joseph A. O'Brien, Esquire

/s/ Luann Manning

_____

LUANN MANNING
Supervisory Legal Assistant

Date: September 1, 2017

DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## CONSENT TO SEARCH

I, _Josiah Keith FERREBEE_, have been informed by U.S. Immigration and
Customs Enforcement (ICE) Special Agent _Kathryn Murray_ _Christopher Kudless, olss Rodriguez 6/2/16 & forensics agents cra_
of my right to refuse to consent to a search of my property, described as: (item, place, things to
be searched, location, etc.)

_Apple, Phone 5   SN C39KTR3RFH19._

I have also been advised by ICE Special Agent _Christopher Kudless_
that, if I voluntarily consent to a search of this property, anything discovered during this search
may be used against me in any criminal, civil, or administrative proceedings.

I have decided to allow ICE Special Agents _Murray, Kudless, & other ICE Agents_
and _other Law Enforcement_ to conduct a complete search of my _iPhone_,
located at _in my possession_.

These ICE Special Agents are authorized by me to take any letters, papers, materials, or other
property which they may desire to examine.

---

I hereby voluntarily and intentionally consent to allow ICE to search my property. My
consent is freely given and not the result of any promises, threats, coercion, or other
intimidation. **I have read the above statement and understand my rights.**

Name (Please Print) _Josiah Keith Ferrebee_

Signature: X _____

Date/Time: _6/2/2016    11:00 AM_

Witnesses: _SA Christopher Kudless_
_SA Olga Rodriguez #8091_

---

PH JR DL # 3159 7947

DOB 10/11/1996

_Passcode 2015_

ICE Form 73-005 (01/08)





Homeland
Security
Investigations

# HOMELAND SECURITY INVESTIGATIONS
## GENERAL POLYGRAPH EXAMINATION

### Statement of Consent

I, _Joseph Forreber_, voluntarily consent to submit to a polygraph examination in connection with an investigation concerning _chld exploitation_.

I agree to submit to the polygraph examination of my own free will and I have not been threatened, coerced or placed under duress. No one has made me any promises in return for my consent.

*I have been advised of and understand the following:*

☐ I can withdraw my consent to submit to a polygraph examination at any time.

☐ The questions that will be asked of me during the polygraph examination will be reviewed with me in an interview prior to the polygraph examination and possibly subsequent to the polygraph examination.

☐ The polygraph components will be attached to my body for the purpose of collecting physiological data during the polygraph examination.

☐ I represent that I am in good health and know of no mental or physical problems that would impair my ability to submit to a polygraph examination.

☐ A polygraph examination can be stressful and I may consult a physician, at my own expense, to determine if it is suitable for me to take a polygraph examination.

☐ The polygraph examination may be electronically recorded or monitored.

☐ Any information obtained during the polygraph examination may be used against me in any civil or criminal proceeding.

☐ Any attempt to influence or manipulate the outcome of this polygraph examination will be viewed as an act of deception.

☐ If I make any materially false statements during the polygraph examination, I may be subject to prosecution under 18 U.S.C. § 1001.

☐ I release and forever hold harmless the United States, the polygraph examiner, and United States government employees of any and all responsibility and liability in connection with this polygraph examination.

I submit that I am _19_ years of age and was born on _10/11/1776_.

_Thomas Buck_
Examiner Name

_[signature]_
Examiner Signature          #4713

_[signature]_
Witness

x _[signature]_
Examinee Signature

x 6-2-16
Date

1431
Time

GOVERNMENT
EXHIBIT
2

## CONSENT TO ASSUME ONLINE PRESENCE

I, _JOSIAH FERREBEG_, hereby voluntarily authorize _SA MURRAY_ or other agents of the HSI to take over control of and use my "online presence." This online presence includes the following screen name(s), nick name(s), and/or e-mail addresses, as well as the passwords associated with these accounts:

| ACCOUNT NAME | PASSWORD |
|---|---|
| JOKSTER 760 | JOKER96 |
| | STAPLE75 |
| | STAPLE50 |
| | JOKER760 |

I consent to the use of my (or my child's) online presence for any purpose relating to an official investigation by the above law enforcement authority, including (but not limited to) sending and receiving e-mail or conducting any other electronic communications, accessing stored information, and using and disclosing such communications or information. I understand and acknowledge that by signing the consent form, I relinquish all present and future claims to the use of these accounts. I understand that law enforcement authorities will change the password(s) to this account so that I will no longer have access.

I give this consent freely and voluntarily, without fear, threats, coercion, or promises of any kind. I have been advised of my right to refuse to allow the assumption of my (or my child's) online presence, and I hereby voluntarily waive this right.

Signature: _____     Witness: _KATHRYN MURRAY_

Name (printed): _Josiah K Ferrbe_     Name (printed): _____ #4713

Date: _6-2-16_

Signature of parent/guardian: _____

Name (printed): _____

Date: _____

File # : _____

GOVERNMENT EXHIBIT
3
CARDELS 800-783-0399

**DEPARTMENT OF HOMELAND SECURITY**
**U.S. Immigration and Customs Enforcement**

## CONSENT TO SEARCH

I, _JOSIAH FERLEBEE_ , have been informed by U.S. Immigration and
Customs Enforcement (ICE) Special Agent _MURRAY & KUDLESS_
of my right to refuse to consent to a search of my property, described as: (item, place, things to
be searched, location, etc.)

_USB THUMB DRIVE (YELLOW CAR)_
_PNY THUMBDRIVE_

I have also been advised by ICE Special Agent _MURRAY_
that, if I voluntarily consent to a search of this property, anything discovered during this search
may be used against me in any criminal, civil, or administrative proceedings.

I have decided to allow ICE Special Agents _MURRAY_
and _KUDLESS_ to conduct a complete search of my _THUMBDRIVES_ ,
located at _ON HIS PERSON_ .
These ICE Special Agents are authorized by me to take any letters, papers, materials, or other
property which they may desire to examine.

---

I hereby voluntarily and intentionally consent to allow ICE to search my property. My
consent is freely given and not the result of any promises, threats, coercion, or other
intimidation. I have read the above statement and understand my rights.

Name (Please Print) _Josiah K Ferrebee_
Signature: X _____
Date/Time: _6/2-16   1751 hrs._
Witnesses: _#47113_

---

ICE Form 73-005 (01/08)


GOVERNMENT
EXHIBIT
4



DEPARTMENT OF HOMELAND SECURITY
U.S. Immigration and Customs Enforcement

## STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights:

You have the right to remain silent.

Anything you say can be used against you in a court of law or other proceedings.

You have the right to consult an attorney before making any statement or answering any questions.

You have the right to have an attorney present with you during questioning.

If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.

If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

## WAIVER

I have read, or someone has read to me, this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Josigh Ferreber
Print Name

Signature                              6-2-16      1428
                                       Date        Time

Witness          Exhibit 5            6/2/16
                                       Date

Witness                                6/2/16
                                       Date