IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA <br> Plaintiff <br> vs. <br> JOSIAH FERREBEE <br> Defendant | No. 3:16-CR-152 <br><br> Honorable James M. Munley |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE**

## I.   Procedural History

The Defendant, Josiah Ferrebee, was charged in a criminal complaint filed in the United States District Court for the Middle District of Pennsylvania on June 3, 2016. The Defendant was charged with persuading a minor to engage in sexual activity for purposes of producing a visual depiction in violation of Section 2251(a) and (e) of Title 18 of the United States Code. 18 U.S.C. § 2251(a); 18 U.S.C. § 2251(e).

The Defendant was brought before Magistrate Judge Joseph F. Saparito for an initial appearance on June 3, 2016. The Defendant pleaded not guilty. The Defendant waived his right to a detention hearing and was detained pending trial without prejudice to request a detention hearing at a later date.

On June 6, 2016, the Defendant, through his counsel, filed a Motion for Psychiatric Evaluation. Judge Saparito granted the motion on June 7, 2016. The

evaluation was conducted at the Federal Detention Center, SeaTac in Washington between July 18, 2016 and September 6, 2016. A report was issued by SeaTac on September 19, 2016. The Defendant was returned to Lackawanna County Prison on October 11, 2016.

The Defendant filed a Motion for Release from Custody on November 29, 2016. The Court denied the Motion and ordered him detained pending trial on December 6, 2016.

On August 9, 2017, the Defendant filed a Motion to Dismiss the Charges against him on the grounds that the United States failed to bring him to trial within seventy (70) days as required by the Speedy Trial Act, 18 U.S.C. 3161(c)(1). The Motion to Dismiss is pending before the Court.

The Defendant also filed a Motion to Suppress certain statements and physical evidence obtained by the United States on August 18, 2017. A hearing on such Motion was held on December 15, 2017. The Court thereafter ordered the parties to submit briefs indicating their respective positions on the Motion to Suppress with citations to the record. This Brief is submitted in support of said Motion to Suppress.

## II.   Statement of Facts

The Defendant was born on October 11, 1996 in Reading, Pennsylvania. The Defendant graduated from Pine Grove High School in 2015 and has no further

educational training. *Transcript of Hearing* (hereinafter "*Transcript*") of December 15, 2017, at 107.

The Defendant lived with both of his parents until 2012, at which time his parents divorced. The Defendant has lived with his mother, Kathy D'Angelo (hereinafter "D'Angelo"), since then. The Defendant does not have a strong relationship with his father. The Defendant has two younger brothers, ages eighteen (18) and sixteen (16). Both brothers reside with his mother.

D'Angelo is an assistant manager at the Twin Grove Campground in Pine Grove, Pennsylvania (hereinafter the "Campground"). The Campground is a recreational vehicle campground. The Defendant also began working at the Campground in 2015. The Defendant was briefly employed at a truck stop from October 2015 through April 2016, when he resumed work at the Campground. The Defendant earned approximately eight dollars ($8.00) per hour at each job. The Defendant has had no other employment.

The Defendant is a heterosexual male. He has never had a girlfriend. Further, he does not have many friends. The Defendant had approximately five (5) friends in high school, but does not keep in close touch with them.

The Defendant is of average intelligence. The Defendant has a limited mental health history of family counseling for approximately one (1) year after his

parents' divorce. The Defendant has never been prescribed psychotropic medication. The Defendant has no history of substance and/or alcohol abuse.

While the Defendant is generally in good health, he suffers from Type-1 Diabetes. The Defendant must closely monitor his blood sugar. The Defendant takes insulin and has a limited diet. When the Defendant's blood sugar is low or high, he often becomes dizzy and this thinking and processing becomes distorted. *Transcript* at 111.

The Defendant has no prior criminal record or involvement with the criminal justice or legal system. *Transcript* at 110. The Defendant has not had an occasion to work with a lawyer on any matter.

The facts on which this criminal matter rests are as follows. On June 2, 2016, the Defendant was suffering from an average blood sugar level. Typically when the Defendant has an average blood sugar level, he becomes dizzy and his thinking and processing becomes distorted. *Transcript* at 111.

The Defendant arrived for work at the Campground on June 2, 2016 at approximately 10:00 a.m. At some point between 10:00 a.m. and 11:00 a.m., the Defendant received a phone call from his mother requesting that he come to the Campground store without specifying a reason. When the Defendant arrived at the Campground store, there were multiple law enforcement personnel present. The

4

Defendant was taken to the camper lounge area, which was more private than the store area, for questioning. *Transcript* at 12.

The primary questioning was done by Special Agents Richard Cerminaro and Kathryn Murray. Neither Agent provided the Defendant with his *Miranda* rights, nor did they otherwise advise him that he had the right to an attorney or the right to refuse to answer the questions. The Defendant felt pressured and coerced to answer the questions and did not feel that he had the right to refuse to answer the questions and terminate the interview.

The interview at the Campground concluded at approximately 12:30 p.m. Special Agent Thad Baxter requested that the Defendant meet him at the Pennsylvania State Police Barracks in Jonestown, Pennsylvania between 1:30 p.m. and 2:00 p.m. for a polygraph examination.

Upon arriving at the State Police Barracks, the Defendant was pat down, taken down a long hallway into a small room with no windows. *Transcript* at 87. The room had two doors, but only one was accessible as an entrance or exit to the Defendant as the other was being used as a room to observe the polygraph examination by Special Agent Murray. At this point, the Defendant was given his *Miranda* rights. However, the Defendant did not believe that he had the right to refuse the test.

5

The United States also performed a search of the Defendant's Apple iPhone, model A1428SNC39KTR3RFH19, a HP Pavilion desktop computer, model P7-126SNMXU203071L, a Seagate hard drive, model ST31000524AS, SN5VPA3JPJ, a PNY thumb drive, and a yellow car thumb drive. The United States obtained consents for such searches on June 2, 2016 through consent forms. Evidence produced from this search included KIK messages allegedly between the Defendant and an unidentified female, and pictures and graphic images of unidentified minor females displaying their genitals or engaging in sexual activity. The pictures and graphic images came from the desktop computer. From the discovery provided, it is not clear whether the KIK messages came from the iPhone, thumb drives, or another source.

### III.  Statement of Questions Involved

A. Should the Court suppress the statements given by the Defendant on June 2, 2016, on the grounds that such statements were the product of custodial interrogation; that the Defendant was not provided with his *Miranda* warnings prior to the statements; that the Defendant did not voluntarily waive his *Miranda* rights; and/or that the statements were otherwise not voluntarily given?

   Suggested Response: Yes, the Court should suppress the statements given by the Defendant on June 2, 2016.

6

B. Should the Court suppress the physical evidence obtained by the United States from the iPhone, desktop, hard drive, and thumb drives on the grounds that the United States did not obtain a warrant before performing said searches and/or that the consents for said searches were not freely and voluntarily given?

Suggested Response: Yes, the Court should suppress the physical evidence obtained from the iPhone, desktop, hard drive, and thumb drives.

## IV.   **Argument**

**A. The Court should suppress the statements given by the Defendant on June 2, 2016 to Homeland Security Special Agents.**

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court established the principle that under the Fifth Amendment, the "prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* warnings are required when a suspect is "(1) 'in custody' and (2) subject to 'interrogation' by the government." *United States v. Dupree*, 617 F.3d 724, 731 n.7 (3d Cir. 2003).

7

It is not necessary for an individual to have been arrested to be 'in custody.' For an individual to be in custody in the absence of an arrest, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the subject to do so." *United States v. Willaman*, 437 F.3d 354, 359 (3d. Cir 2006). Courts consider a variety of factors when determining whether a person was in custody, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to questioning. *Id*. at 359-60.

Further, courts have held that 'interrogation' does not necessarily require explicit questioning. Interrogation is defined as "conduct intentionally designed to evoke a confession, as well as any conduct an officer should reasonably have foreseen would elicit an inculpatory response." *United States v. Bonner*, 469 Fed. Appx. 119, 126 (3d Cir. 2012).

Even if an individual is subject to custodial interrogation, he may waive his *Miranda* rights, provided that such waiver is made knowingly, intelligently, and voluntarily. *United States v. Pruden*, 398 F.3d 241, 246 (3d Cir. 2005). Such waiver

8

must be "voluntarily in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception" and "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 246; *United States v. Whiteford*, 676 F.3d 348, 362 (3d Cir. 2012). If a defendant challenges the admissibility of any statements made while in custody, the government must prove by a preponderance of the evidence that the defendant was advised of and understood his *Miranda* rights and that he validly waived such rights. *United States v. Briscoe*, 69 F. Supp. 2d 738, 741 (D.V.I. 1999), *aff'd in part, rev'd in part on other grounds*, 234 F.3d 1266 (3d. Cir 2000). The Supreme Court has characterized this as both a "heavy" and "great burden." *Miranda*, 384 U.S. at 475; *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

To determine whether *Miranda* rights have been voluntarily, knowingly, and intelligently waived, courts must consider the totality of the circumstances surrounding the defendant's statement. *United States v. Tyler*, 164 F.3d 150, 158 (3d Cir. 1998). In evaluating the totality of the circumstances, courts should examine "some traditional indicia of coercion", including (1) the duration and conditions of detention; (2) the attitude of the police toward the suspect; (3) the suspect's maturity, education, physical condition, and mental state; (4) the suspect's background and experience; and (5) the suspect's prior dealings with the

9

criminal justice system. *Colorado v. Spring*, 479 U.S. 564, 574 (1987). *United States v. Jacobs*, 431 F.3d 99, 108 (3d Cir. 2005); *Lam v. Kelcher*, 304 F.3d 256, 264 (3d Cir. 2002).

As stated previously, courts consider a variety of factors in determining whether an individual is in custody. In the present case, it is apparent that the Defendant was in custody when the Special Agents subjected him to questioning. The Defendant did not feel that he was free to leave during the first round of questioning at the Campground. *See Transcript* at 104. The questioning took place in the "lounge area", which was described as "off the beaten path." *Id*. at 12. In order for the Defendant to be able to leave the interview, he would have to walk around a coffee table surrounded by the two interviewing Special Agents as well as a State Police Officer seated in a chair. *See id*. at 42, 57. D'Angelo testified that she believed the State Police Officer was armed, with a firearm on his hip. *Id*. at 110. Further, it was possible for the Defendant to see the Homeland Security Special Agents' firearms. *Id*. at 17, 44-45. There was only one viable exit from the lounge area, through an archway. *Id*. at 107. The other archways were blocked by walls used for merchandise in the store area. *Id*. The two exterior sets of doors were also not viable exits from the lounge area as one set was kept locked at all times and the other was an emergency exit. *Id*. at 105-06. Further, there were law enforcement agents continuously coming in and out of the lounge area, which, as acknowledged

by Special Agent Cerminaro in his testimony, "would make [the Defendant] feel even more uncomfortable." *Id*. at 50. The Defendant's mother did not remain for questioning because she was asked to leave and did not feel as if she had a choice whether to leave or stay. *Id*. at 104, 116. During the polygraph examination portion of the questioning, the Defendant was patted down and walked down a hallway to a windowless room with only one (1) usable door. *Id*. at 87. The total time of the questioning, including the polygraph examination, was around six (6) hours. While Special Agent Baxter testified that he knew from experience that the polygraph examination might take a considerable amount of time, he did not inquire into how the Defendant's diabetes and prescription medication might affect his stamina. *Id*. at 95-96. The Defendant gets sleepy, groggy, and cannot focus at times because of his diabetes. *Id*. at 111. D'Angelo testified that "you can ask a question and [the Defendant] will give you a blank stare at times, like, he didn't quite understand what you were saying to him." *Id*. at 111. In light of the above factors, it is clear that the Defendant was subject to custodial interrogation. As the Defendant was not given his *Miranda* rights, the prosecution may not use the Defendant's statements. *Miranda*, 384 U.S. at 444. Further, the statements given during the polygraph examination are inadmissible despite the *Miranda* warnings under *Missouri v. Seibert*, 542 U.S. 600 (2004), as a continuation of the prior testimony and the "fruit of the poisonous tree."

Further, the Defendant did not waive his *Miranda* rights. The Defendant was not advised of his *Miranda* rights until the polygraph examination. As a result of the circumstances illustrated more fully above, the Defendant did not believe that he was free to refrain from answering the questions. The total duration of the interviewing process was around six (6) hours. The Defendant is young with a high school education. *Transcript* at 107. The Defendant also has diabetes which affects his thinking and makes him groggy and unable to focus. *Id.* at 111. Lastly, the Defendant has no prior experience with the criminal justice system. *Id.* at 110. As a result, it is apparent that the Defendant did not waive his *Miranda* rights.

In summary, as the Defendant was subject to custodial interrogation without the proper procedural safeguards as required by the Supreme Court in *Miranda*, and did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, the prosecution may not use the statements obtained from the Defendant during such custodial interrogation.

**B. The Court should suppress the physical evidence obtained by the United States on June 2, 2016.**

The Fourth Amendment to the United States Constitution generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects. U.S. CONST. amend. IV. Digital devices and computer networks are covered by the Fourth Amendment. *United States v. Stabile*, 633 F.3d 219, 230-

12

31 (3d Cir. 2011). The prohibition against unreasonable searches does not apply, however, to situations in which voluntary consent has been obtained. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Consent can be explicit or implicit, and the authority to consent may be actual or apparent. *See, e.g., United States v. Buckner*, 473 F.3d 551, 555 (4th Cir. 2007). The question of whether consent to search was in fact voluntary, or whether consent was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of the circumstances.

The Defendant did not knowingly, voluntarily, and intelligently consent to the search of his iPhone. The consent to search form was presented to the Defendant shortly after the time the interview began. *Transcript* at 54. The witnesses to the consent to search iPhone form were not present at the December 15, 2017 hearing. *Transcript* at 24. Special Agent Murray was present while the Defendant signed the form, and stated that the form was not read word-for-word to the Defendant but summarized. *Id*. at 63. Special Agent Murray testified that it took only approximately three (3) minutes to summarize the form, allow the Defendant a chance to read the form, and obtain certain information from the Defendant regarding the device to be searched, such as its passcode and the type of device being searched. *Id*. Further, Special Agent Murray testified that the summary included telling the Defendant that by signing, he was allowing law

13

enforcement to search his cellular device. *Id*. at 66. As the Defendant was rushed into signing the form so shortly after the initiation of the interview, the Defendant did not sign the form with full knowledge of the consequences of signing a consent form, nor did the Defendant possess knowledge of his right to refuse. As such, the Defendant did not knowingly, intelligently, and voluntarily consent to the search by the United States.

Further, the Defendant renews the arguments asserted in his previous Brief in that consent to search the desktop computer, hard drive, and thumb drives was not freely and voluntarily given by the Defendant, and that therefore, any evidence obtained from those searches should be suppressed.

## V.     Conclusion

The Defendant submits that the statements obtained from him on June 2, 2016 and that the evidence obtained from the search of his iPhone, desktop, hard drive, and thumb drives should be suppressed, and that the United States should not be allowed to use said evidence during its case-in-chief at the trial in this matter. The Defendant contends that the statements were obtained and the searches were conducted in violation of the Fourth Amendment to the United States Constitution. When a defendant files a Motion to Suppress, the United States has the burden of establishing by a preponderance of the evidence that it did not obtain such evidence in violation of the defendant's rights. *United States v. Ritter*, 416

14

F.3d 256, 261 (3d Cir. 2005). The government has not met its burden of proof as the Defendant's Fourth Amendment rights were violated, and as such, the statements and physical evidence should be suppressed.

Respectfully submitted,

/s/ Joseph A. O'Brien
Joseph A. O'Brien, Esq.
Attorney I.D. No.: 22103
Oliver, Price & Rhodes
1212 South Abington Road
P.O. Box 240
Clarks Summit, PA 18411
Phone: (570) 585-1200
Fax: (570) 585-5100
Email: jaob@oprlaw.com
*Attorney for Defendant*

15

## CERTIFICATE OF SERVICE

I, **JOSEPH A. O'BRIEN, ESQUIRE**, of Oliver, Price & Rhodes, hereby certify that on this date, I caused the foregoing BRIEF IN SUPPORT OF MOTION TO DISMISS via the Court's ECF system on all counsel of record as authorized under Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for the Middle District of Pennsylvania. I further certify that all counsel of record in the case, but for the Plaintiff, are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

>  Francis P. Sempa, Esq.
>  U.S. Attorney's Office
>  235 North Washington Avenue
>  Scranton, PA 18503
>  Email: fran.sempa@usdoj.gov

>  /s/Joseph A. O'Brien
>  Joseph A. O'Brien, Esquire