UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

JOSIAH FERREBEE
    Defendant

No. 3:16-CR-152

(electronically filed)

## GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I)

Defendant Josiah Ferrebee has filed a pro se motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release due to "extraordinary and compelling" medical reasons in the context of COVID-19. The United States respectfully opposes the motion. This Court should deny the motion with prejudice because Defendant has not met his burden of establishing that a sentence reduction is warranted under the statute, and would pose a grave danger to the public if he were released.

### Factual Background

On May 9, 2019, the defendant pleaded guilty to production and attempted production of child pornography, 18 U.S.C. Section 2251(a).

On October 22, 2019, Ferrebee was sentenced to 180 months (15 years) in prison to be followed by a five-year term of supervised release.

Ferrebee on November 23, 2020, filed the instant pro se motion for compassionate release due to "extraordinary and compelling" health reasons in the context of COVID-19. **Ferrebee previously requested the warden of FMC Devens for compassionate release, and that request was denied on November 13, 2020. According to the senior staff attorney at FMC Devens, Ferrebee was considered for home confinement under the CARES Act and was denied last month. In his motion to the court, Ferrebee claims that he suffers from type 1 diabetes, and prison medical records confirm this. (Ferrebee's prison medical record is attached under seal). The prison medical record indicates that Ferrebee is being treated for diabetes. Ferrebee is being treated with insulin and other medications.**

### BOP's Response to the COVID-19 Pandemic

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. As this court is aware, In response to the pandemic, BOP

has taken significant measures to protect the health of the inmates in its charge. **FMC Devens is a federal medical center and follows CDC guidelines and BOP protocols.**

BOP has explained that "maintaining safety and security of [BOP] institutions is [BOP's] highest priority." BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement (Mar. 19, 2020), available at https://www.bop.gov/resources/news/20200319_covid19_update.jsp.

Indeed, BOP has had a Pandemic Influenza Plan in place since 2012. BOP Health Services Division, Pandemic Influenza Plan-Module 1: Surveillance and Infection Control (Oct. 2012), available at https://www.bop.gov/resources/pdfs/pan_flu_module_1.pdf. That protocol is lengthy and detailed, establishing a six-phase framework requiring BOP facilities to begin preparations when there is first a "[s]uspected human outbreak overseas." *Id.* at i. The plan addresses social distancing, hygienic and cleaning protocols, and the quarantining and treatment of symptomatic inmates.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, in an effort to relieve the strain on BOP facilities and assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is exercising greater authority to designate inmates for home confinement. On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Congress has also acted to enhance BOP's flexibility to respond to the pandemic. Under the Coronavirus Aid, Relief, and Economic Security Act, enacted on March 27, 2020, BOP may "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" if the Attorney General finds that emergency conditions will materially affect the functioning of BOP. Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note). On April 3, 2020, the Attorney General gave the

Director of BOP the authority to exercise this discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission. As of this filing, BOP has transferred 1,280 inmates to home confinement. *See* Federal Bureau of Prisons, *COVID-19 Home Confinement Information*, *at* https://www.bop.gov/coronavirus/.]

In addition to all of these measures, the independent Inspector General of the Department of Justice will continue to engage in inspections of the BOP facilities to assure compliance with necessary steps.

Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

In addition, as part of a coordinated effort to mitigate the risk posed by COVID-19, the Attorney General has instructed the BOP to prioritize and expand its consideration of inmates for possible release to home confinement

In assessing whether home confinement should be granted pursuant to the March 26, 2020 Memorandum, BOP considers the

totality of circumstances for each individual inmate, the statutory

requirements for home confinement, and the following non-exhaustive

list of discretionary factors:

    a. The age and vulnerability of the inmate to COVID-19, in accordance with the CDC guidelines;

    b. The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;

    c. The inmate's conduct in prison, with inmates who have engaged in violent or gang-related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment;

    d. The inmate's score under PATTERN (the Prisoner Assessment Tool Targeting Estimated Risk and Need),[1] with inmates who have anything above a minimum score not receiving priority treatment;

    e. Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility;

    f. The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community.  Some offenses, such as sex offenses, will render an inmate

---

[1] For more information on PATTERN, please visit www.bop.gov via Inmates/ First Step Act tab.

ineligible for home confinement. Other serious offenses weigh heavily against consideration for home confinement.

In addition to setting forth these factors, the March 26, 2020 Memorandum stated that before granting any inmate discretionary release, the BOP Medical Director, or someone he designates, will, based on CDC guidance, make an assessment of the inmate's risk factors for severe COVID-19 illness, risks of COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the location in which the inmate seeks home confinement. The BOP will not grant home confinement to inmates when doing so is likely to increase their risk of contracting COVID-19. The BOP will grant home confinement only when it has determined – based on the totality of circumstances for each individual inmate – that transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19.

Moreover, the March 26, 2020 Memorandum noted that for the protection of the public, any inmate to whom BOP grants home confinement is to be placed in a mandatory 14-day quarantine before that inmate is discharged from a BOP facility to home confinement. Inmates transferred to home confinement under this prioritized

process are also subject to location monitoring devices and, where a court order is entered, are subject to supervised release.

According to publicly available statistics, the BOP has increased home confinement placements by over 55% since March 2020, and is continuing to aggressively screen inmates for home confinement. Since the March 26, 2020 Memorandum instructing the BOP to prioritize home confinement as an appropriate response to the COVID-19 pandemic, the BOP has placed an additional 1,576 inmates on home confinement. *See* www.bop.gov.

Inmates do not need to apply to be considered for home confinement.  BOP Case Management staff are reviewing all inmates to determine which ones meet the criteria established by the Attorney General.  While all inmates are being reviewed for suitability for home confinement, any inmate who believes he or she is eligible may request to be referred to home confinement and provide a release plan to his or her Case Manager.

In order to prioritize its limited resources, BOP has generally prioritized for home confinement those inmates who have served a certain portion of their sentences, or who have only a relatively short

amount of time remaining in those sentences.  While these priority factors are subject to deviation in BOP's discretion in certain circumstances and are subject to revision as the situation progresses, BOP is at this time prioritizing for consideration those inmates who either (1) have served 50% or more of their sentences, or (2) have 18 months or less remaining in their sentences and have served 25% or more of their sentences.  As BOP processes the inmates eligible for home confinement under these criteria and learns more about the COVID-19 pandemic and its effect on BOP facilities, it is assessing whether and how to otherwise prioritize consideration.

If an inmate does not qualify for home confinement under BOP criteria, he or she may be reviewed for placement in a Residential Reentry Center and home confinement at a later stage in accordance with applicable laws and BOP policies. **As noted above, Ferrebee was considered for home confinement under the CARES Act and was denied last month.**

## FMC Deven's Specific Mitigation Efforts.

Taken together, all of these measures are designed to mitigate sharply the risks of COVID-19 transmission in a BOP institution. BOP has pledged to continue monitoring the pandemic and to adjust its practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead. But BOP must consider its concern for the health of its inmates and staff alongside other critical considerations. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of both transportation for

10

inmates (at a time that interstate transportation services often used by released inmates are providing reduced service), and supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

FMC Devens, as noted above, follows the CDC and BOP guidelines and protocols. On November 1, 2020, the BOP issued its COVID-19 extension to Phase Nine Action Plan. FMC Devens' Clinical Director has outlined the steps the facility has taken and is taking to limit the spread of the virus. (The Clinical Director's "Declaration" is attached under seal—paragraphs 19 through 59 sets forth specific measures adopted by FMC Devens). FMC Devens also follows the BOP's national directives.  As of November 27, 2020, there are no positive cases for inmates at FMC Devens, and four staff members have tested positive. There have been no new positive inmate cases for months, and 44 inmates and 7 staff have recovered from COVID-19. There were two inmate deaths in the spring of 2020, one of whom had terminal cancer but the death was technically attributed to COVID-19.

**Defendant's Conviction and Request for a Sentence Reduction**

The defendant pleaded guilty to production and attempted production of child pornography, and was sentenced to 15 years in prison. Ferrebee lured a 15-year-old minor female by communicating with her online and saying that he was depressed and would kill himself unless she sent him nude photos of her.  After she sent a nude photo of herself, Ferrebee then engaged in "sextortion," by repeatedly threatening to place her photo on the internet unless she took more sexually explicit photos of herself and sent them to him. He demanded that she photograph herself placing a toothbrush, scissors and hair straightener into her vagina, which she did. He insisted that she use a scissors or knife to cut her nipple and photograph that and send it to him. Each time he did this, he asked the minor female to tell him if it hurts. When a search warrant was executed and Ferrebee was interviewed, he admitted that he did these things with 15-year-olds because they are easier to manipulate. He admitted to engaging in similar conduct with other 13-15 year old girls. His advisory guideline range was 210-262 months.

## Legal Framework

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* **Here, as noted above, the defendant requested FMC Devens to grant him compassionate release and was denied. So he has exhausted his administrative remedies.**

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements

issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the

movant, the defendant bears the burden to establish that he or she is

eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896,

899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th

Cir. 2014).

The Sentencing Commission has issued a policy statement

addressing reduction of sentences under § 3582(c)(1)(A). As relevant

here, the policy statement provides that a court may reduce the term of

imprisonment after considering the § 3553(a) factors if the Court finds

that (i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to

the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[2]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the

---

[2] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

## Arguments

The Court should deny the defendant's motion with prejudice. Although the Defendant has established the existence of "extraordinary and compelling reasons" that could support a sentence reduction based on his medical conditions, Defendant has not met his burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

### Defendant Has Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

As explained above, under the relevant provision of § 3582(c), a court can grant a sentence reduction only if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include, as relevant here, certain specified categories of medical conditions. USSG § 1B1.13, cmt. n.1(A) and (C).

For that reason, to state a cognizable basis for a sentence reduction based on a medical condition or family circumstances, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. Those categories include, as particularly relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover,". USSG 1B1.13, cmt. n.1(A). If a defendant's medical condition does not fall within one of the categories specified in the application

note (and no other part of the application note applies), his or her motion must be denied. **Here, the defendant, age 24, suffers from type 1 diabetes. The defendant's prison medical record indicates that he is being treated for diabetes at the federal medical center.**

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020), *as revised* (Apr. 8, 2020); *see also United States v. Eberhart*, 2020 WL 1450745, at *1 (N.D. Cal. Mar. 25, 2020) ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of

the Sentencing Commission as required by § 3582(c)(1)(A).").[3] To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread

---

[3] *See also, e.g., United States v. Coles*, 2020 WL 1899562 (E.D. Mich. Apr. 17, 2020) (denied for 28-year-old inmate at institution with outbreak); *United States v. Okpala*, 2020 WL 1864889 (E.D.N.Y. Apr. 14, 2020); *United States v. Weeks*, 2020 WL 1862634 (S.D.N.Y. Apr. 14, 2020); *United States v. Haney*, 2020 WL 1821988 (S.D.N.Y. Apr. 13, 2020) (denied for 61-year-old with no other conditions); *United States v. Pinto-Thomaz*, 2020 WL 1845875 (S.D.N.Y. Apr. 13, 2020) (two insider trading defendants with less than a year to serve have no risk factors); *United States v. Korn*, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."); *United States v. Carver*, 2020 WL 1892340 (E.D. Wash. Apr. 8, 2020).

prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19,[4] that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (*i.e.*, one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. USSG § 1B1.13, cmt. n.1(A)(ii)(I). But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than

_____

[4] *See* Centers for Disease Control, *At Risk for Severe Illness*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last modified Apr. 2, 2020).

if he or she remains incarcerated. That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

**In this case, the federal medical center has determined that Ferrebee's medical condition does not warrant his early release or home confinement.**

Therefore, Ferrebee has established the existence of an "extraordinary and compelling reason" for a sentence reduction under § 3582(c). But, as noted below, he should be denied that reduction based on the 3553(a) factors.

### Defendant Still Poses a Significant Danger to the Safety of the Community and the § 3553(a) Factors Strongly Weigh Against His Release.

Despite the defendant's medical conditions—which are being satisfactorily treated—Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he is not a danger to the safety of the community or otherwise merits release under the § 3553(a) factors.

Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger

to the safety of any other person or to the community." USSG §

1B1.13(2). Additionally, this Court must consider the § 3553(a) factors,

as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States*

*v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Defendant would pose a danger to public safety, especially

children, if released. He was convicted of a terrible crime committed in

an especially heinous manner. He first lured a 15-year-old girl to chat

online with him by pretending he was depressed and suicidal. He

persuaded her to take a pornographic photo of herself and send it to

him to cheer him up and save his life, and the girl did so. Then he used

"sextortion" by threatening to place the photos on the internet unless

the girl took and sent him additional sexually explicit photos of herself.

He insisted that she photograph herself placing a toothbrush, scissors,

and a hair straightener into her vagina, and she did so. He also insisted

that she use the scissors to cut her nipple and photograph that. He

admitted to doing similar things with girls ages 13-15, and stated that

they are easier to manipulate. The defendant's criminal conduct in this

case shows that he would be a danger to the community, especially

young females, if he were to be released. This Court should deny a

sentence reduction on that basis alone.

Accordingly, in light of Defendant's offense and the totality of

relevant circumstances, this Court should deny the motion for a

sentence reduction.

## Conclusion

For these reasons, this Court should deny Defendant's motion for

a sentence reduction with prejudice.

<div style="margin-left:50%">

Respectfully submitted,

DAVID J. FREED
United States Attorney

</div>

Dated:  December 1, 2020

<div style="margin-left:50%">

s/ Francis P. Sempa
FRANCIS P. SEMPA
Assistant United States Attorney
fran.sempa@usoj.gov
PA 41294
William J. Nealon Fed. Bldg.
Scranton, Pennsylvania 18501
(570) 348-2800

</div>

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 3:16-CR-152 |
| v. | |
| JOSIAH FERREBEE<br>Defendant. | (electronically filed) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.  That on December 1, 2020 she served a true and correct copy of the foregoing

**GOVERNMENT'S RESPONSE TO DEFENDANT'S PRO SE MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I).**

by U.S. Mail to the address below:

Josiah Ferrebee
Reg. # 75226-067
FMC Devens
PO Box 879
Ayer, MA 01432

s/ Luann Manning
LUANN MANNING
Supervisory Legal Assistant

24