1

1

2              IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
3

4  UNITED STATES OF AMERICA :
                          :
5                         :
                          :
6      vs                 :    3:CR-16-152
                          :
7                         :
                          :
8  JOSIAH FERREBEE        :
                          :
9                         :

10


11

        BEFORE:      THE HONORABLE JAMES M. MUNLEY
12
        PLACE:       COURTROOM NO. 3
13
        PROCEEDINGS:  CHANGE OF PLEA
14
        DATE:        THURSDAY, MAY 9, 2019
15

16


17
   APPEARANCES:
18
   For the United States:
19
   FRANCIS P. SEMPA, ESQ.
20 U.S. ATTORNEY'S OFFICE
   235 N. WASHINGTON AVENUE
21 3RD FLOOR
   SCRANTON, PA 18503
22
   For the Defendant:
23
   JOSEPH A. O'BRIEN, ESQ.
24 OLIVER, PRICE & RHODES
   1212 SOUTH ABINGTON ROAD
25 PO BOX 240
   CLARKS SUMMIT, PA 18411

1       MR. SEMPA:  Good afternoon, Your Honor.  Your Honor,

2  call the case of the United States versus Josiah Ferrebee.  The

3  docket number is 3:16-CR-152.  Your Honor, this is originally

4  the time and place set for a motion for new counsel for the

5  defendant.  It's my understanding that the defendant is going

6  to withdraw that motion.

7       MR. O'BRIEN:  Yes, Your Honor.

8       THE COURT:  Can you speak up?

9       MR. O'BRIEN:  Yes.  Your Honor, I think it was also

10  set on a hearing for motion -- pro se motion he filed for new

11  counsel and a pro se motion he filed for release on bail.  My

12  understanding he's going to withdraw both those motions.

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  Have you discussed that with your lawyer?

15       THE DEFENDANT:  Yes, Your Honor.

16       THE COURT:  Good, okay.

17       MR. SEMPA:  And, Your Honor, subsequent to that, the

18  parties have reached a plea agreement in this matter.  The

19  defendant is -- has agreed to plead guilty to count one of the

20  indictment which charges him with a violation of Title 18

21  United States Code Section 2251 A. and E., which is the

22  production and attempted production of child pornography.  That

23  charge carries a mandatory minimum sentence of 15 years in

24  prison, a potential maximum sentence of 30 years in prison, a

25  fine of up to $250,000, at least five years, up to a life term

3

1  of supervised release and a $100 ordinary special assessment,

2  and unless the defendant is determined to be indigent, a $5,000

3  in addition to that special assessment.

4          THE COURT:  Very good.  All right.  Mr. Ferrebee,

5  good afternoon.

6          THE DEFENDANT:  Good afternoon.

7          THE COURT:  Now, I've been informed that you wish to

8  enter a plea of guilty to the charge.  Is that right?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And that's count one?

11          MR. SEMPA:  Count one, yes, Your Honor.

12          THE COURT:  Count one of the indictment.

13          MR. SEMPA:  Correct.

14          THE COURT:  Before accepting your plea -- I have been

15  informed you wish to enter plea of guilty to the charge; is

16  that correct?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  Before taking a plea it's necessary for

19  the judge in any of these cases to ask you a lot of questions.

20  It's necessary to make sure you know what you're giving up when

21  you plead guilty and I am convinced that it's voluntary on your

22  part, okay.  First thing we are going to do is swear you in.

23  Swear the witness in, please.  Raise your right hand.

24          JOSIAH FERREBEE, called as a witness, being duly

25  sworn, testified as follows:

4

1  BY THE COURT:

2  Q.   Mr. Ferrebee, you are under oath.  It's imperative that

3  you answer the questions truthfully.  Otherwise you can be

4  charged with perjury or false statement, all right.  Now, I

5  have you -- your age at 23?

6  A.   22, Your Honor.

7  Q.   22, better yet.  And where are you from?

8  A.   Pine Grove, Pennsylvania, Schuylkill County.

9  Q.   Pine Grove?

10 A.   Yes.

11 Q.   That's down near Harrisburg?

12 A.   About 45 minutes north of Harrisburg.

13 Q.   Okay.  And how far did you go to school?

14 A.   I graduated in 2015.

15 Q.   From high school?

16 A.   Yes.

17 Q.   And you read and write the English language?

18 A.   Yes.

19 Q.   And have you had any drugs or alcohol in the last 24

20 hours?

21 A.   No, I have not.

22 Q.   Have you ever been treated for a mental condition?

23 A.   No.

24 Q.   And Mr. O'Brien represents you.  Are you satisfied with

25 his competence and his abilities?

1  A.    Yes.

2  Q.    And so now, Mr. O'Brien is standing at your hand -- at

3  your left hand.  The only reason he's here is to protect you

4  and to answer any questions you may have.  We encourage you as

5  we go through this, just lean over and talk him any time at

6  all.  In addition to that, if you want to talk to him

7  privately, let me know, and you can step to the back of the

8  courtroom and talk to him privately, okay?

9  A.    Okay.

10  Q.    So I'll be asking you a number of -- making a lot of

11  statements about the law and asking questions.  And at any time

12  you don't understand what is said and you need further

13  explanation, please indicate that to me, and I will do my best

14  to rephrase it or explain it further for you, okay?

15  A.    Okay.

16  Q.    And so, Josiah, it's my responsibility to explain to you

17  your constitutional rights and how you're affected by pleading

18  guilty.  And the first of these is you understand you don't

19  have to plead guilty today.  Do you understand that?

20  A.    Yes, I do.

21  Q.    If you didn't, at a time -- well, we already have the jury

22  -- you are going to trial in this case next June 3rd, all

23  right.  So on that date we would call a large panel of jurors

24  in the courtroom from throughout northeastern Pennsylvania.

25  And on that occasion, you and Mr. O'Brien would participate in

6

1   selecting 12 of those people, and they would sit over there in

2   the jury box.  They'd hear your case, hear the case from both

3   sides, and at the end of it, they would render a verdict of

4   guilty or not guilty.  And now, so I can best explain to you

5   what rights you give up when you plead guilty by illustration

6   of what rights you have presently, all right.  And from that

7   you can understand what rights you have and what effect a

8   guilty plea has.

9        So if you had continued to plead not guilty, you would

10  have a trial before this jury, which I just explained.  All

11  right?

12  A.   Yes.

13  Q.   And at that trial, you would be presumed innocent and the

14  government, Mr. Sempa, would have the burden of proof.  He

15  would have to prove you guilty beyond a reasonable doubt, and

16  he would also -- not he -- but if you went to trial, you would

17  not have to prove you were innocent.  In fact, you would have

18  no obligation whatsoever to present any evidence on your

19  behalf.  Do you understand that?

20  A.   Yes, I do.

21  Q.   And at trial you'd be entitled to be represented by Mr.

22  O'Brien and through him to confront and cross-examine any

23  witness who might appear to testify.  Do you understand that?

24  A.   Yes, I do.

25  Q.   At trial you also be entitled to have witnesses summoned

1    to appear and testify on your behalf if you so desired.  Do you

2    understand?

3    A.    Yes, I do.

4    Q.    And do you understand that with this jury, the 12 people

5    on the jury, you can only be found guilty -- you can only be

6    convicted, Josiah, by the jury if it unanimously found you

7    guilty of the charges, which means that all 12 jurors would

8    have to agree on your guilt before you could be found guilty of

9    the charges.  Do you understand that?

10   A.    Yes.

11   Q.    And trial you'd have the right to testify if you choose to

12   do so, but you'd also have the right not to testify.  And if

13   you chose not to testify, I would instruct you -- the jury that

14   it could not draw any adverse inference whatsoever from your

15   failure to testify.  So these are the principles I wanted to

16   review with you.  Do you understand everything I said so far?

17   A.    Yes.

18   Q.    Any questions about anything?

19   A.    Not at this time.

20   Q.    So obviously these constitutional rights we have been

21   discussing, they contemplate you pleading not guilty and having

22   a jury trial.  The first question I asked you here, Josiah, I

23   said, Josiah, I've been informed that you wish to enter a plea

24   of guilty to the charge, and you said yes, Judge, I do.

25   A.    Yes.

1  Q.   Right.  So if you plead guilty -- and that's what we're

2  doing now -- if you enter that plea, there won't be any trial,

3  there won't be a jury, and you will have waived or surrendered,

4  given up these constitutional rights that I just explained.  So

5  is it your desire to give up these rights and enter a plea of

6  guilty?

7  A.   Yes.

8  Q.   And you think it's in your best interest to do so?

9  A.   Yes.

10 Q.   And if you enter a plea of guilty and it's accepted by the

11 Court, you won't be allowed to withdraw the plea if you're

12 unhappy with the sentence that I impose.  Do you understand

13 that?

14 A.   Yes, I do.

15 Q.   All right.  Now, the crime that you're charged with is --

16 what crime?

17       MR. SEMPA:  Production and attempted production of

18 child pornography.

19       THE COURT:  Do you understand that?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Now I am going to ask Mr. -- the

22 prosecutor, Mr. Sempa, if he'd review the elements of that

23 crime for you.

24       MR. SEMPA:  Your Honor, the elements are that the

25 defendant -- a person persuades or entices or attempts to

persuade and entice a person under the age of 18 to engage in

sexually explicit conduct for the purpose of producing a visual

depiction of such conduct and he knew or had reason to know

that that visual depiction would be transmitted using a means

and facility of interstate commerce and in and affecting

interstate commerce by any means including by computer.  It's a

violation of Title 18 United States Code Section 2251 A. and E.

THE COURT:  Those are the elements of the specific

crime you're charged with.  Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Now, I am going to have Mr. Sempa put on

the record the factual basis.  He's going -- put on the record

what you did, and please listen to him.  I will come back and

ask you, do you specifically admit that you did these things.

MR. SEMPA:  Your Honor, in early February of 2016, a

14-year-old girl who lived in -- lives in Grand Traverse County

in Michigan contacted the sheriff's office and advised that she

had been in communication with an individual via Kik Messenger

through her iPad and that individual was at the time telling

this 14-year-old girl that he was going to kill himself, and he

persuaded her to send her images of herself, naked images of

herself.  She initially did that, and then he demanded that she

send him more images and if she did not that he threatened to

post those images online.

And then he persuaded and convinced her to take

1  images of herself including images of her breasts and her

2  vagina as well as persuaded her to insert certain objects in

3  her vagina and take photographs and images of those and send

4  them to him because if she didn't, he said he was going to post

5  other images.  The investigation followed up, a forensic

6  analysis of the -- her iPad turned up the images that she had

7  sent him and the -- they were able to identify the computer and

8  the location of the computer or cell phone that was being used

9  by the person that was communicating with her.

10          They traced it to Pine Grove, Pennsylvania.

11  Ultimately they identified the defendant as the person who was

12  involved in communicating with the 14-year-old girl.  On June

13  3rd, 2016, the agents interviewed Mr. Ferrebee in Pine Grove,

14  Pennsylvania in Schuylkill County.  He was shown the chat logs

15  and text messages that they had retrieved from the girl's iPad.

16  He admitted that he did, in fact, send those messages and did

17  communicate with that girl and did persuade that girl to send

18  him pornographic images of herself as I have described.

19          He even initialed the chats and signed the first page

20  of the chats.  That is essentially the evidence we would

21  present.

22          THE COURT:  And now, I want to ask you specifically,

23  did you do the things he says you did?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And I am aware you have a guilty plea.

1  Do you have a copy there?

2           MR. SEMPA:  I do, Your Honor.

3           THE COURT:  I am aware of the fact, Josiah, that you

4  have this plea agreement, all right, in this case.  But I want

5  -- I want to -- under the statute, what is the maximum penalty

6  that could be imposed which is under the statute?

7           MR. SEMPA:  Right.  Under the statute, Your Honor,

8  there's a mandatory minimum sentence of 15 years and a

9  potential maximum sentence of 30 years in prison, a fine of up

10 to $250,000, at least five years, up to a life term of

11 supervised release that would follow any prison sentence and a

12 possibility of $5,100 in special assessments.

13 BY THE COURT:

14 Q.    Do you understand that?

15 A.    Yes.

16 Q.    And are you entering this plea according to your own free

17 will?

18 A.    Yes, I am.

19 Q.    Has anyone forced you, induced you, threatened you,

20 cajoled you, coerced you in any way to plead guilty?

21 A.    No.

22 Q.    And I just want to talk to you for a moment about the plea

23 agreement.  The plea agreement and plea bargains are where the

24 government and defendant get together and make mutual

25 concessions to each other.  One of your concessions, of course,

12

1  is you enter the plea of guilty.  And the plea bargaining and

2  plea agreements are dubious terms, sinister terms.  But I want

3  you to understand that these are perfectly valid procedures

4  here in the federal courts, and they are specifically approved

5  by the United States Supreme Court.  And so let's look at that

6  plea agreement, all right.  And it's sitting in front of you,

7  Josiah.  Have you seen that plea agreement before?

8  A.    Yes, I have.

9  Q.    And have you read it?

10  A.    Yes.

11  Q.    And has it been explained to you fully by Mr. O'Brien?

12  A.    Yes, he has.

13  Q.    Have you had sufficient time to go over the plea agreement

14  with Mr. O'Brien?

15  A.    Yes.

16  Q.    And do you have any questions about the plea agreement?

17  A.    No.

18  Q.    And I am going to ask the United States attorney to

19  briefly explain the plea agreement, and I will be back to you

20  briefly.

21        MR. SEMPA:  Yes, Your Honor.  The defendant has

22  agreed to plead guilty to count one of the indictment, which

23  charges him with production and attempted production of child

24  pornography.  He understands both the mandatory minimum and the

25  potential maximum sentence that I have outlined.  The United

States has agreed that it will move to dismiss the remaining

count in the indictment against the defendant after sentencing.

The United States has also agreed that it will not bring any

other criminal charges against the defendant directly arising

out of his involvement in this offense.

The defendant understands that, however, nothing in

the agreement would limit prosecution for criminal tax charges

if there were any that arose from this offense.  Counsel and

the defendant both understand that the sentencing guidelines in

an advisory capacity to the Court do apply to the offense to

which he's pleading guilty.  If the defendant can adequately

demonstrate an affirmative acceptance of responsibility to the

government, the government will recommend that he receive a

three-level reduction in his offense level for acceptance of

responsibility.

The defendant understands that the failure of the

Court to find that he's entitled to that three-level reduction

is not a basis upon which to void the plea agreement.  At the

time of sentencing, the United States reserves the right to

make any recommendation that it considers appropriate based

upon the nature and circumstances of the case.

The defendant understands that pursuant to the Victim

and Witness Protection Act, the Crime Victim Rights Act, the

Justice For All Act and regulations promulgated under those

acts by the Attorney General that crime victims have certain

1    rights that are set forth in paragraph 15 of the indictment,

2    and he has -- I'm sorry -- of the plea agreement, and he has

3    reviewed those with his counsel.  The defendant also

4    understands in cases involving child pornography, he

5    understands that restitution may be involved, that there is a

6    mandatory restitution act that is involved and that it will be

7    up to the Court to determine the appropriate restitution, if

8    any, under Title 18 United States Code Section 2259 for any

9    identifiable victims in the images of child pornography.

10           The defendant understands that the Court is not a

11   party to the agreement and is not bound by the agreement or any

12   recommendations made by the parties and, therefore, is free to

13   impose on the defendant any sentence that it deems appropriate

14   up to and including the maximum sentence allowed by law.  The

15   defendant further understands that if the Court imposes a

16   sentence with which he is dissatisfied or declines to follow

17   the recommendations of the parties, he will not be allowed to

18   withdraw his guilty plea for those reasons alone.

19           The defendant also understands that the Court as a

20   condition of any supervised release must order the defendant to

21   comply with all sex offender registration requirements under

22   the Sex Offender Registration and Notification Act.  The

23   defendant further acknowledges that one possible consequence of

24   a guilty plea is that a Court may determine after the

25   completion of his sentence that the defendant is a sexually

15

1  dangerous offender and may commit the defendant to a medical

2  facility for treatment.  Those are the essential aspects of the

3  plea agreement.

4          THE COURT:  Mr. O'Brien, you heard Mr. Sempa.  Is

5  that your understanding of the plea agreement?

6          MR. O'BRIEN:  Yes, Your Honor.

7          THE COURT:  And, Mr. Ferrebee, you heard Mr. O'Brien

8  and Mr. Sempa.  Do you agree that's the plea agreement you

9  entered?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  Now, turn to the last page.

12  What number page is that?

13          MR. SEMPA:  His signature is on page 30.

14  BY THE COURT:

15  Q.   Josiah, is that your signature?

16  A.   Yes, it is.

17  Q.   Has anyone promised you what the sentence will be in the

18  case?

19  A.   No.

20  Q.   And I just want to talk to you for a moment about the

21  Sentencing Reform Act and these guidelines that we have talked

22  about.  And the -- the guidelines are promulgated by the

23  commission -- sentencing commission of the federal government.

24  And have you and Mr. O'Brien talked about the sentencing

25  guidelines and how they might apply to your case?

16

1  A.   Yes.

2  Q.   Do you understand that the Court will not be able to

3  determine the guideline sentence for your case until we have

4  the benefit of the presentence report and after that's

5  completed, you and the government have had an opportunity to

6  review it and if necessary to challenge the -- you can

7  challenge the facts and conclusions reported by the probation

8  officer.  Do you understand that?

9  A.   Yes.

10  Q.   Do you understand about these guidelines, Josiah, what

11  they do is they establish sentencing ranges, but these

12  sentencing ranges are only advisory to the Court.  They are not

13  mandatory on the Court, but the Court does consult and take the

14  guidelines into account when imposing a sentence on you.  Do

15  you understand that?

16  A.   Yes, I do.

17  Q.   So do you understand that after it's been determined what

18  guideline range applies to a case the judge has the authority

19  to impose a sentence that is more severe or less severe than

20  the sentence that's suggested by the guidelines?  Do you

21  understand that?

22  A.   Yes.

23  Q.   Someone coughed.  I didn't hear what you said.  Is that

24  correct?

25  A.   Yes.

1  Q.    Do you understand that if you're sentenced to prison, a

2  term of supervised release will be imposed after you're

3  released from prison?

4  A.    Yes.

5  Q.    And if you violate -- after you're out of prison, if you

6  violate your supervised release, you can be returned to prison.

7  Do you understand that?

8  A.    Yes, I do.

9  Q.    Do you understand that under the circumstances under

10 certain -- some circumstances you or the government may have a

11 right to appeal any sentence I impose in the case?  Do you

12 understand that?

13 A.    Yes.

14 Q.    Do you understand that parole has been abolished here in

15 the federal courts and if you were sentenced to prison you will

16 not be released on parole?  Do you understand that?

17 A.    Yes, I do.

18 Q.    Do you understand that if the sentence is more severe than

19 you expected, you will still be bound by your plea and will

20 have no right to withdraw it?  Do you understand that?

21 A.    Yes.

22 Q.    The crime you're pleading guilty to is a felony.  And if

23 accepted and adjudicated, it can deprive you of valuable civil

24 rights such as the right to vote, the right to hold public

25 office, the right to serve on a jury and the right to possess

1    any kind of a firearm, and in appropriate cases, it can affect

2    immigration statuses.  Moreover, as a consequence of pleading

3    guilty, you may be required to submit to DNA sampling.  Do you

4    understand those things?

5    A.    Yes, I do.

6    Q.    Well, so we talked over the last half hour about all these

7    various aspects of the plea -- the plea, all right.  And have

8    you understood everything I said?

9    A.    Yeah.

10   Q.    Is there anything you don't understand, you wish me to

11   return to for a fuller explanation?

12   A.    No.

13   Q.    Is it still your intention to plead guilty to the charge?

14   A.    Yes, it is.

15   Q.    And you think pleading guilty would be in your best

16   interest?

17   A.    Yes.

18   Q.    All right.  Mr. Ferrebee, how do you plead to the charge,

19   guilty or not guilty?

20   A.    Guilty.

21   Q.    All right.  We'll defer ruling on the plea agreement until

22   we have the benefit of the presentence investigation report.

23   And the report will be disclosed in July --

24          PROBATION OFFICER LAVELLE:  The presentence report

25   will be disclosed July 5th, 2019, and the sentencing date will

19

1  be August 12th, 2019 at 10 a.m.

2  BY THE COURT:

3  Q.   Disclosure date will be next July 5th, and Mr. Ferrebee

4  will stand before the Court for sentencing on August 12th, at

5  10:30 a.m.  All right?

6            PROBATION OFFICER LAVELLE:  10 a.m.

7            THE COURT:  10 a.m.

8            MR. SEMPA:  Okay.  Thank you, Your Honor.

9            THE COURT:  Any other charges or --

10           MR. SEMPA:  At sentencing we will move to dismiss,

11  yeah.

12           THE COURT:  I've been passed -- Josiah, a piece of

13  paper which purports to be you're requesting me to permit you

14  to withdraw the -- your plea of not guilty and to enter a plea

15  of guilty to count one of the indictment.  Is that right?  Is

16  that your signature on there?

17           THE DEFENDANT:  Yes, it is.

18           THE COURT:  It is.  I am going to grant your motion

19  -- your request, and I will affix my signature to this

20  document.

21           MR. O'BRIEN:  May he have a few minutes to confer

22  with his family who has come up here --

23           THE COURT:  Yeah.  His family is here, and the

24  marshals are directed that they make arrangements for -- he may

25  be able to sit down with his family, all right.

20

1        MR. O'BRIEN:  Thank you, Your Honor.

2        MR. SEMPA:  Thank you, Your Honor.

21

1                        REPORTER'S CERTIFICATE

2

3       I, Laura Boyanowski, RMR, CRR, Official Court Reporter for

4  the United States District Court for the Middle District of

5  Pennsylvania, appointed pursuant to the provisions of Title 28,

6  United States Code, Section 753, do hereby certify that the

7  foregoing is a true and correct transcript of the

8  within-mentioned proceedings had in the above-mentioned and

9  numbered cause on the date or dates hereinbefore set forth; and

10 I do further certify that the foregoing transcript has been

11 prepared by me or under my supervision.

12

13

14                          s/ Laura Boyanowski, RMR,CRR
                            Laura Boyanowski, RMR, CRR
15                          Official Court Reporter

16 REPORTED BY:

17     LAURA BOYANOWSKI, RMR, CRR
       Official Court Reporter
18     United States District Court
       Middle District of Pennsylvania
19     235 N. Washington Avenue
       Scranton, PA  18503

20

21       (The foregoing certificate of this transcript does not
   apply to any reproduction of the same by any means unless under
22 the direct control and/or supervision of the certifying
   reporter.)

23

24

25