1

1    IN THE UNITED STATES DISTRICT COURT
2       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

3

UNITED STATES OF AMERICA,      )
4                              )
              Plaintiff        )
5                              )
        vs                     )    3:16-CR-00152
6                              )
JOSIAH FERREBEE,               )
7                              )
              Defendant        )
8  _____    )

9

10      TRANSCRIPT OF PROCEEDINGS - SENTENCING
        BEFORE THE HONORABLE JAMES M. MUNLEY
          TUESDAY, OCTOBER 22, 2019
11            SCRANTON, PENNSYLVANIA

12

FOR THE GOVERNMENT:
13    FRANCIS P. SEMPA, ESQ.
      Assistant United States Attorney
14    Room 311
      235 N. Washington Avenue
15    Scranton, Pennsylvania  18503

16 FOR THE DEFENDANT:
      JOSEPH A. O'BRIEN, ESQ.
17    Oliver, Price & Rhodes
      1212 South Abington Road
18    PO Box 240
      Clarks Summit, PA  18411

19

20

21 Proceedings recorded by machine shorthand, transcript produced
   by computer-aided transcription.
22 _____

23      SUZANNE A HALKO, RMR, CRR
        CERTIFIED REALTIME REPORTER
24       235 N. WASHINGTON AVENUE
        SCRANTON, PENNSYLVANIA 18503

25

1          MR. SEMPA:  Good morning, Your Honor.  I call the

2   case of the United States versus Josiah Ferrebee.  The Docket

3   Number is 3:CR-16-152.  This is the time and place set for

4   sentencing in this matter.  The Defendant is present with

5   counsel and previously entered a plea of guilty to the

6   production and attempted production of child pornography.

7          Your Honor, a presentence investigation report has

8   been completed.  There are no objections to the presentence

9   report and we're prepared to move for sentencing.

10          THE COURT:  And there are no objections?

11          MR. O'BRIEN:  Your Honor, we have been discussing it

12   for a long time, but we are satisfied with the report.

13          I would like to just make -- Mr. Ferrebee is asking

14   to make two points.

15          MR. SEMPA:  Your Honor, if I may.  The only reason is

16   he likes us to go first at sentencing.  Thank you.

17          MR. O'BRIEN:  It's on a presentence report issue.

18          MR. SEMPA:  Just on the report, okay.

19          MR. O'BRIEN:  Judge, there are two very, very minor

20   errors in the presentence report.  It refers to Mr. Ferrebee's

21   employment at a Dairy Queen in Moosic.  He actually worked at a

22   Dairy Queen in Pine Grove.

23          Another point it refers to is that he is the youngest

24   of three children and he's actually the oldest, but other than

25   that, we just put that on the record, and that would be done

1  with.

2          MR. SEMPA:  Your Honor, the government is requesting

3  the Court to impose a sentence within the guideline range.  The

4  guideline range here is 210 to 262 months.  We believe the

5  guideline range --

6          THE COURT:  260 to?

7          MR. SEMPA:  210 to 262, Your Honor.

8          There is a mandatory minimum sentence of 15 years or

9  180 months.  We think that, however, a sentence in the

10  guideline range would be more appropriate, given, really, the

11  egregious nature of the conduct in this case.

12          This is someone who -- yeah, he produced child

13  pornography.  He had this victim go on camera or take pictures

14  of herself, but he had her commit sexual acts to herself;

15  egregious, horrible sexual acts to herself, and we think that

16  the Court should consider that in imposing a sentence in this

17  case.

18          We think that under the 3553(a) factors, that the

19  need for just punishment, given what this victim was put

20  through, and she was put through what is commonly called

21  sextortion.  He is someone who got her to send photographs of

22  herself, and in order to get her to do more, he threatened to

23  put those online and to show them to other people, and you can

24  see in the chats that went back and forth, he did that

25  repeatedly and scared this girl and caused her to perform these

1  acts on herself and create images of them.  That is horrible,

2  horrible conduct.  So just punishment, we believe, cries out

3  for a sentence in the guideline range.

4          The need to deter other people from committing

5  similar crimes.  This is someone who took advantage of a young

6  girl in a sexual nature and, as I said, used extortion, if you

7  will, to get -- to get these images.

8          We think that protection of the public is important,

9  another fact that weighs in favor of a sentence within the

10  guideline range, again, given the serious conduct that this

11  individual was involved in.

12          Again, this is not your, what I would call, your

13  ordinary production of child pornography case, given what he

14  had this girl do to satisfy his sexual desires and his control.

15          So we think that those factors are the factors that

16  are the most important that the Court should consider, and we

17  believe that a sentence within the guideline range is the most

18  appropriate sentence.  Thank you.

19          THE COURT:  Mr. O'Brien.

20          MR. O'BRIEN:  We are asking the Court to impose a

21  15-year sentence in this case; that is, the statutory minimum

22  would be 180 months in prison.

23          We agree with Mr. Sempa's statement that we should

24  look at the 3553 factors, seriousness of the offense,

25  deterrence, protection of the public, just sentence, and we

1    believe that 15 years in prison is a very long time, and that a

2    15-year sentence meets that requirement.  It satisfies those

3    factors.

4            Also, Your Honor, we would like the Court to consider

5    other factors in making its determination.  This is a first

6    offense of the Defendant for which he's accepted

7    responsibility.  He's been in prison for 3 and a half years in

8    Lackawanna County.  He's behavior has been exemplary.  He

9    hasn't had one write-up.  He hasn't had any problems.  While

10   he's been in prison, I probably have visited him 25 times.

11           THE COURT:  What was that?

12           MR. O'BRIEN:  I have gotten to know him very well

13   because I have probably visited him 25 times at least over the

14   last 3 and a half years.  He's been very cooperative with me.

15   He's accepted his responsibility, as he will state to the Court

16   in a minute.  He's accepted responsibility for his actions.

17           He's committed to living a law-abiding life when he

18   gets out of prison.  He's over his problem, at least in his

19   view.  He has a very pleasant personality.  He's highly

20   intelligent, a humble and religious person.

21           My view is that he's the type of person who can turn

22   his life around.  He's very -- he has all of those qualities.

23   I would foresee after finishing his sentence that he would be

24   able to live a productive law-abiding life.

25           Another thing I would like to talk about, Your Honor,

1  is his very supportive family.  Your Honor, the family members

2  are here; his father, his mother, two grandparents are here

3  today in the courtroom.  A little later they would like to

4  speak briefly to the Court.  They have been involved in this

5  case since the beginning.  They have cooperated with me.  They

6  visit him almost every week at the prison.  They have supported

7  him, and they will continue to do so while he's in federal

8  custody and when he's released, and that is another factor, I

9  think, that would indicate that he's the type of person who

10  will be able to turn his life around and that, therefore, the

11  15-year sentence would be more appropriate under these

12  circumstances.

13         Your Honor, Mr. Ferrebee would like to speak briefly

14  to the Court and so would the father, mother, and grandparents.

15  I don't know if you want to do that now.  How do you want to do

16  it?

17         MR. SEMPA:  Whatever you want.

18         MR. O'BRIEN:  Mr. Ferrebee, would you like to address

19  the Court?

20         MR. FERREBEE:  Thank you.

21         Your Honor, I do humbly apologize to not only the

22  Honorable Court, but also the prosecution in this case, my

23  victim, and also my family.

24         It has been very hard the last 3 and a half years of

25  my incarceration, but I feel myself have changed.  I know

7

1  Mr. Sempa, he talked about control, and, yes, back in 2016, I

2  was out of control.  I didn't know where I was and I didn't

3  know what I was doing, but I feel that over the last 3 and a

4  half years of incarceration that I have changed and I am more

5  under control.

6          THE COURT:  How long have you been there?

7          MR. FERREBEE:  Three and a half years.

8          At the same time, I do feel very humble towards the

9  Court in this proceeding.

10         If I may I ask, I ask for forgiveness from everybody

11 in here that's involved in this case, including the victim in

12 this case.  I did not know the victim personally, but now I

13 feel the same pain she did when I was doing my actions.

14         That's all, Your Honor.

15         MR. O'BRIEN:  Your Honor, may I call some family

16 members to briefly address the Court?

17         THE COURT:  Yes.

18         MR. O'BRIEN:  We have the mother; Cathy De'Angelo,

19 the father; Brian Ferrebee, two grandparents; Marguerite

20 O'Brien and Dennis O'Brien.

21         Brian Ferrebee, would you stand up and briefly

22 address the Court and speak loudly, please?

23         THE COURT:  Are you the father?

24         MR. FERREBEE:  My name is Brian Ferrebee.  I'm

25 Josiah's father.  I'm sorry if I get a little emotional.

1          Back when my son was in high school, he was a squad

2  leader in the band.  He was a leader.  He worked full time, an

3  outstanding citizen, more or less.  Once he graduated high

4  school, he worked full time, was looking to buy his own car and

5  everything.

6          Back when he was in high school, he was in the ROTC,

7  which is an Army training program, where he had ambitions of

8  joining the Army.  He was actually third in command of the

9  ROTC, and he was only in it for 3 years.  If he would have been

10  in for the fourth year, I could almost guarantee he would have

11  been like the battalion commander for the high school.  That

12  shows that he has leadership abilities and he can work with

13  other people and he's easy to get along with.

14          He's been in here 3 and a half years, and from what I

15  heard from other people, like, that's a long time to be here in

16  Lackawanna County.  I mean, I could be wrong.  I don't know.

17          He's a good kid, and even, like I said, when -- I'm

18  sorry -- when Mr. O'Brien said when he was in prison here for

19  the last 3 and a half years, he never gave a problem.  He does

20  have his family support, including my wife.  We all support

21  him, stand by him, and we're there for him almost every week,

22  if we can be.  My job doesn't permit me to be up to see him

23  every week, but I get up when I can.  I write him and send him

24  letters.  So I guess I would say beg for your mercy in

25  sentencing.  Thank you for your time.

1          MR. O'BRIEN:  Cathy.

2          MS. DE'ANGELO:  Good morning, Your Honor.  I'm Cathy

3   De'Angelo.  I'm Josiah's mother.

4          His father went about how Josiah was in high school,

5   the accomplishments he had in high school.  I just want to kind

6   of give you an upbringing of how he was as a child.

7          From day one, he's been my little boy, and as little

8   boys do, they get themselves into trouble every now and then,

9   but for the most part, he's a very good kid, very shy kid.  He

10  didn't seem to have an overabundance of friends at any given

11  time.  He did have his band friends, had his ROTC friends.

12         His goal in life was to actually go into the Army.

13  He talked about that most of his early teen years.  He couldn't

14  wait to try that.  God had different plans and allowed him to

15  get diabetes which kept him from the Army.

16         When Josiah graduated high school, he did not know

17  what to do because all his life he wanted that Army.  It took

18  him a year.  He was getting his life straightened out when all

19  of this occurred.  He was actually enrolling himself into

20  college.  He was getting ready to get into college and start

21  working on something.  We always encouraged him to hang onto

22  that music because he was an excellent trumpet player, but

23  overall he's a good kid.  He was never a troublemaker.

24         He has two younger brothers that support him fully.

25  He will always have the full support of his family here and

1   from here on out.  He always has and always will.

2          Like I said, he's my little boy.  Even though he's 23

3   years old, he's still my baby.  So nothing will keep me from

4   loving him, nothing will keep me from supporting him, and I

5   intend to do that from today on out, just as I have this whole

6   time.  Thank you.

7          THE COURT:  Thank you very much for coming in.

8          MR. O'BRIEN:  Dennis O'Brien.

9          Your Honor, I would say the parents have been very

10  supportive and the grandparents have been visiting Josiah for

11  --

12          THE COURT:  I can't hear you from where you're

13  standing.

14          MR. O'BRIEN:  Not only have the parents been very

15  support, but also the grandparents, and that's why we would ask

16  them to speak briefly to the Court.

17          THE COURT:  Good morning.

18          MS. O'BRIEN:  Good morning, Your Honor.  I'm

19  Marguerite O'Brien.  I'm Josiah's grandmother, and his mother

20  and his father have already told you most of his life history,

21  and I just want to say that Josiah has been -- out of my 11

22  grandchildren, I think he has been the one that has helped us

23  when we needed help, as far as going up on the roof at 3:00 in

24  the morning to take the snow away from the chimney so that we

25  could get the furnace to work.

1          When I had my first surgery on my knee, he was there
2   to help me.  He stayed almost the entire time with us for a
3   while just to help me get around.  He is just an exceptional
4   kid.

5          He was in church every week playing his trumpet, and
6   he will always be supported by me and his granddad as long as
7   the Lord wills for us to be here to support him, and I just
8   pray as we have for the last 3 and a half years.

9          We were shocked when all of this happened because it
10  was so out of character for Josiah, but we will support him and
11  love him and do whatever it takes for him to be back into
12  society.  Thank you.

13          THE COURT:  Thank you very much.

14          MR. O'BRIEN:  Your Honor, Dennis O'Brien is Josiah's
15  grandfather.

16          MR. O'BRIEN:  Your Honor, this has been a long
17  journey for the past 3 and a half years to go to the prison
18  every week and to visit with him, but I have seen so many
19  changes in his life over this period of time.

20          I remember going to church that he played the trumpet
21  there and he loved to play the trumpet.  As my wife said, we
22  are going to support him in all the time that he has to serve,
23  and whatever it is, we will be there to support him.

24          He's a great kid and he got into trouble.  He
25  acknowledges that.  We have talked about that in prison, and he

1  acknowledges that and he puts his faith in the Lord, whatever

2  God wants to be done, and so certainly we're going to be

3  supportive of him, Your Honor.  Thank you.

4          THE COURT:  Thank you very much.

5          Does that conclude it?

6          MR. O'BRIEN:  Yes, Your Honor.

7          THE COURT:  Mr. Ferrebee, in passing sentence on you,

8  I have taken into consideration your presentence investigation

9  report and the seriousness of the offenses here and your words,

10 what you said here today, your father and your mother and their

11 thoughts on you and their love for you, and your grandmother

12 and grandfather and the kind of child you were and they support

13 you, and the statements by Mr. O'Brien and, of course, Mr.

14 Sempa, the United States Attorney, which he is very concerned

15 about the seriousness of the offense, and there's no question

16 this is a very serious offense.

17          In imposing sentence on you, the sentence imposed

18 satisfies the purposes, I believe, of our sentencing act,

19 Section 3553(a), which includes the necessity of deterrence,

20 just punishment, promotion for respect of the law, protection

21 of the public, and assurance of correctional treatment for you,

22 and reflects full consideration of all the factors, including

23 the nature and seriousness of the offense, your history, your

24 characteristics, the kinds of sentences that are available, the

25 advisory sentencing ranges, and the policies prescribed by the

13

1  sentencing commission, and I believe that the sentence I will

2  impose is reasonable in light of all of these circumstances.

3          This case, in early February 2016, Homeland Security

4  Investigation in Philadelphia received a request to identify an

5  internet user name jokester760 who used Kik instant messaging.

6  Jokester 760 contacted a minor female referred to as DM to

7  produce and send images of child pornography.

8          In February of 2016, DM was interviewed by a

9  detective from the Michigan Sheriff's Office.  DM advised that

10  she was home on January 26th of 2016 in her living room,

11  sitting on the couch, when she received a message from somebody

12  that did not know -- that she did not know, jokester.

13          DM did not remember the full user name, but

14  remembered the title of it, killing myself.  DM stated that

15  during the conversation, the person asked her to take

16  photographs of herself, which she did, and she advised that she

17  gave jokester information about herself, and he threatened to

18  post it if she did not give more information.

19          DM had stated that while she was inside the bathroom,

20  she took photographs of herself unclothed, including

21  photographs of her breasts and vagina, and DM also stated that

22  jokester wanted her to do certain things to herself, including

23  scissors to cut herself.  DM complained with regard to the

24  request.

25          So the Defendant, Ferrebee, was identified by the

1  agents who subsequently executed search warrants at his

2  residence on his media devices and determined that Ferrebee had

3  solicited a minor to produce the sexually explicit pictures of

4  herself and having her send them to him.  He also threatened to

5  expose the minor by the internet if she did not do as he

6  requested.

7           Now, this young man -- I believe he's 22 years of

8  age -- is a lifelong resident of Schuylkill County.  He has

9  not -- he's not married and has no children and his parents are

10 very supportive.  We have heard from them here this morning.

11          Now, he has some very serious health issues.  We have

12 had hearings on this with regard to I had the warden here about

13 his treatment for some form of diabetes, and it's a very, very

14 serious condition.  No current mental health issues.  He

15 participated in counseling services after his parents had

16 separated.  He earned his high school degree and was enrolling

17 in college prior to his arrest on the instant federal offenses.

18          So it is a very, very sad case and a very serious

19 one, but let me start out by just saying this young man had no

20 prior criminal record.  We have heard about the kind of boy he

21 is family-wise and the support that he has.  His father talks

22 about his leadership in high school and he worked full time

23 when in high school, and shortly after, he entered the ROTC and

24 he developed some leadership training there.  He has been at

25 the prison already 3 years and no problems.  He's been a model

1    prisoner.

2           His mother talked about how they are so -- of course,

3    they love their son and they're very, very supportive of him.

4    The grandmother said he's been a big help and all of this and

5    this conduct was out of character.

6           His grandfather talked about how he's changed, talked

7    about him at church and the trumpet.  All of that is very, very

8    serious.  He has no prior criminal record, and we take that

9    into consideration and that is very important.

10          So it's a very sad case, and it's a very sad case to

11   be dealing with such very serious conduct.  This is a very

12   young man.  He has his whole life ahead of him.  It's a very

13   sad case for the parents to go through this and the

14   grandparents.  They talked about how it's out of character for

15   him, but nonetheless, I can't overstate how stated by

16   Mr. Sempa, the victim and victims in general, we have to

17   consider the appropriateness of a sentence when we are dealing

18   with this kind of unusual conduct.  I guess it's not that

19   unusual because we deal with this terrible criminal aspect of

20   life on an ongoing basis.

21          So, you know, the Court doesn't always make the right

22   decisions, but in any event, this is a very, very troubling

23   matter in terms of the families and victims and actors, and

24   this is a young man.  I just say this kid really goofed up, you

25   know.

1        For all of these reasons, I'm going to pass sentence.

2 You know, there is not too much I can say about it because it

3 is something out of the ordinary.  It isn't like a drug case

4 and an assault and battery.  It borders on the mental and

5 emotional.

6        In any event, this fellow, he has -- he says that he

7 has his life under control, the family are all talking about

8 that.  He has been examined, and there is no mental problems,

9 and he has been an exemplary inmate while he was up there at

10 the jail.

11        So, for all of these reasons, now, to wit, this 22nd

12 day of October, 2019, pursuant to the Sentencing Reform Act of

13 1984, it is the judgment of this Court that Josiah Ferrebee is

14 hereby committed to the custody of the Bureau of Prisons to be

15 imprisoned for a term of -- I'm going to grant a variance in

16 the case, and the reasons specifically for the variance that he

17 has no prior record, his age of 22, a young man, that he has

18 extremely strong family support, to afford the Defendant proper

19 medical treatment for this serious diabetes condition and sex

20 offender treatment, and to assure that there is no sentencing

21 disparity with similar particular cases in the Middle District

22 of Pennsylvania, and I'm going to sentence him to a term of 180

23 months, and that is 15 years, and that is -- Fran, that's the

24 mandatory --

25        MR. SEMPA:  It is, Your Honor.

17

1          THE COURT:  -- under the statute.

2          It is ordered that he shall pay to the Clerk of the

3   United States District Court a special assessment of $5,000, a

4   special assessment of $100 due immediately.

5          We find the Defendant does not have the ability to

6   pay a fine.  Restitution has not been determined.

7          During the term of imprisonment, the $5,000 special

8   assessment is payable every three months in an amount, after a

9   telephone allowance, equal to 50 percent of the funds deposited

10  into his inmate trust fund account.

11         In the event his restitution is not paid in full

12  prior to commencement of his supervised release, he shall, as a

13  condition of his supervised release, satisfy the amount in

14  monthly payments of no less than $100, to commence 30 days

15  after release.

16         Upon release from imprisonment, he shall be placed on

17  supervised release for a term of 5 years, and within 72 hours

18  of release from the custody of the Bureau of Prisons, he shall

19  report in person to the probation office in the district to

20  which he is released.

21         While on supervised release, he shall not commit

22  another federal, state, or local crime, and shall not possess a

23  dangerous weapon, and shall abide by the standard conditions

24  adopted by the Court and the following additional conditions:

25         One, he must not unlawfully possess a controlled

 1   substance.

 2          Two, he must cooperate in the collection of a DNA

 3   sample.

 4          He must comply with the requirements of the Sex

 5   Offender Registration and Notification Act as directed by the

 6   probation officer and the Bureau of Prisons or any state sex

 7   offender registration agency in the location where you reside,

 8   work, or are a student, or were convicted of a qualifying

 9   offense.

10          You shall apply all monies received from income tax

11   refunds, lottery winnings, judgments, or other anticipated or

12   unexpected financial gains to the outstanding court-ordered

13   obligations.

14          You must provide the probation officer with access to

15   any requested financial information and authorize the release

16   of any financial information, and they may share their

17   financial information with the U.S. Attorney's Office.

18          You must not incur any new credit charges or open

19   additional lines of credit without the approval of your

20   probation officer.

21          The judgment imposes a financial penalty.  You must

22   pay the financial penalty in accordance with the scheduled

23   payments of this judgment, and you must also notify the Court

24   of any changes in your economic circumstances that might affect

25   the ability to pay this financial obligation.

1          You must not have direct contact with any child you

2     know or reasonably should know to be under the age of 18

3     without the permission of a probation officer.

4          If you do have any direct contact with any child you

5     know or reasonably should know to be under the age of 18

6     without the permission of the probation officer, you must

7     report this conduct to the probation officer within 24 hours.

8          Direct conduct includes written communication,

9     in-person communication, or physical contact.  Direct contact

10    does not include incidental contact during ordinary daily

11    activities in public places.

12          You must not go to or remain at any place where you

13    know children under the age of 18 are likely to be, including

14    parks, schools, playgrounds, and child care facilities.

15          You must participate in a sex offense-specific

16    treatment program and follow the rules and regulations of that

17    program.  The probation officer will supervise your

18    participation in the program, which could include an evaluation

19    and completion of any recommended treatment.

20          You must submit to periodic polygraph testing at the

21    direction of the probation officer as a means to ensure that

22    you are in compliance with the requirements of your supervision

23    or treatment.

24          You must not access the internet except for reasons

25    approved in advance by the probation officer.

1          You must submit your computers or other electronic

2    communications or data storage devices or media to a search.

3    You must warn any other people who use these computers or

4    devices capable of accessing the internet that the devices may

5    be subject to searches pursuant to this condition.  The

6    probation officer may conduct a search pursuant to this

7    condition only when reasonable suspicion exists that there is a

8    violation of a condition of supervision and that the computer

9    or device contains evidence of the violation.  Any search will

10   be conducted at a reasonable time and in a reasonable manner.

11         You must allow the probation officer to install

12   computer monitoring software on any computer.

13         To ensure compliance with the computer monitoring

14   condition, you must allow the probation officer to conduct

15   periodic and unannounced searches of any computers subject to

16   computer monitoring.  These searches shall be conducted to

17   determine whether the computer contains any prohibited data

18   prior to installation of the monitoring software; to determine

19   whether the monitoring software is functioning effectively

20   after it's installation, and to determine whether there have

21   been any attempts to circumvent the monitoring software after

22   its installation.  You must warn any other people who use these

23   computers that the computers may be subject to searches

24   pursuant to this condition.

25         You must submit your person, property, house,

1  residence, vehicle, papers, computers, other electronic

2  communications or data storage device or media, or office, to a

3  search conducted by a United States probation officer.  Failure

4  to submit to a search may be grounds for revocation of release.

5  You must warn any other occupants that the premises may be

6  subject to search pursuant to this condition.

7         The probation officer may conduct a search under this

8  condition only when reasonable suspicion exists that you have

9  violated a condition of supervision and that the areas to be

10  searched contain evidence of this violation.  The search must

11  be conducted at a reasonable time and in a reasonable manner.

12         You must not view or possess any visual depiction,

13  including any photograph, film, video, picture, or computer or

14  computer-generated image or picture, whether made or produced

15  by electronic, mechanical, or other means, of sexually explicit

16  conduct that would compromise your sex offense-specific

17  treatment.

18         You must not communicate, or otherwise interact, with

19  the victims, either directly or through someone else, without

20  first obtaining the permission of the probation officer.

21         We find that the Defendant possesses a low risk of

22  future substance abuse and, therefore, suspends mandatory drug

23  testing.

24         You can appeal your conviction if you believe that

25  your guilty plea was somehow unlawful or involuntary, or if

1    there is some other fundamental defect in the proceedings that

2    was not waived by your guilty plea.

3           You also have a statutory right to appeal your

4    sentence under certain circumstances, particularly if you think

5    the sentence is contrary to law, and with few exceptions, any

6    notice of appeal must be filed by you within 14 days of today,

7    the date of your sentencing.

8           If you are unable to pay the costs of an appeal, you

9    may apply for leave to appeal in forma pauperis, and if you so

10   request, the clerk of the court will prepare and file a notice

11   of appeal on your behalf.

12          Now, I know that we have had hearings with regard to

13   Josiah and his health, and I hope the Bureau of Prisons takes

14   that into consideration, and this man's health is the primary

15   concern to the Court and to everyone else because we have --

16   based upon several hearings that we had with regard to him

17   about his condition -- tried to take measures, but in the

18   federal courts, our system will provide better medical

19   treatment for his condition.

20          Mr. Ferrebee, you're a young man and you have your

21   whole life ahead of you, and when this is all over with,

22   certainly you owe an awful lot to your mother and father and

23   grandmother and grandfather for their support.  Most people

24   that come here, they don't have any support at all.  So you are

25   a very lucky guy, and you have been treated well by the federal

23

1  government and by Mr. O'Brien.

2          So good luck to you.  I know a lot of your family is

3  here.  I ask the marshals if they will arrange for him to see

4  his family before he leaves here today.

5          Anything else?

6          MR. SEMPA:  Your Honor, just pursuant to the plea

7  agreement, I would move to dismiss Count 2 of the indictment.

8          THE COURT:  It is granted.

9          MR. O'BRIEN:  Can the Court recommend to the Bureau

10  of Prisons incarceration near his family?

11          THE COURT:  Yes, I do, but I think the primary thing

12  here, Joseph, is this fellow's health.  They got to take that

13  into consideration.  I mean, you know, we went to great

14  lengths, and I have been advised by other medical things that

15  this guy has serious health problems.

16          So good luck to you, Josiah, but I don't disagree, if

17  they can do both, because the support of his family would be

18  very important, and he has a lot of support for his

19  rehabilitation.

20          MR. O'BRIEN:  Thank you, Your Honor.

21          MR. SEMPA:  Thank you, Your Honor.

22      (At this time, the proceedings in the above-captioned

23  matter adjourned.)

24

25

24

# C E R T I F I C A T E

I, SUZANNE A. HALKO, Official Court Reporter for the United States District Court for the Middle District of Pennsylvania, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct transcript of the within-mentioned proceedings had in the above-mentioned and numbered cause on the date or dates hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my supervision.

_____
SUZANNE A. HALKO, RMR,CRR
Official Court Reporter

REPORTED BY:

SUZANNE A. HALKO, RMR,CRR
Official Court Reporter
United States District Court
Middle District of Pennsylvania
Scranton, Pennsylvania  18501

(The foregoing certificate of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or supervision of the certifying reporter.)